## COMMONWEALTH *vs.* JOHN PAUL SOSNOWSKI.

No. 96-P-1012.

Essex. May 12, 1997. - August 15, 1997.

Present: Brown, Smith, & Laurence, JJ.

*Evidence,* Prior misconduct, Relevancy and materiality, Privileged communica-
tion. *Jury and Jurors. Practice, Criminal,* Challenge to jurors, Instructions
to jury, Reasonable doubt, Presumptions and burden of proof, Sentence.
*Privileged Communication.*

At a rape trial, evidence of an uncharged bad act was not too remote and was
admissible as relevant to the jury's understanding of the relationship
between the complainant and the defendant. [370-372]
Where a criminal defendant did not raise an objection at trial to the Com-
monwealth's use of nine of its ten peremptory challenges to eliminate men
from the jury and where, thus, the Commonwealth did not have an op-
portunity to explain the use of its peremptory challenges, the record was
insufficient to raise the issue of a *Soares* (*Commonwealth* v. *Soares,* 377
Mass. 461, cert. denied, 444 U.S. 881 [1979]) violation. [372-373]
At the trial of a rape indictment, the defendant's motions for production of the
victim's counseling records were correctly denied, where the defendant did
not advance any factual basis indicating how the privileged records were
likely to be relevant. [373-374]
At a criminal trial, the judge's instruction to the jury on reasonable doubt, the
Commonwealth's burden of proof, the elements of the crime and the
limitations on the jury's use of certain evidence were proper, and the judge
correctly instructed the jury that they had a duty, if they concluded that the
defendant was guilty, to return a guilty verdict. [374]
At a criminal trial, the judge's comments, added after a standard instruction
from *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 101-102 (1973), did not
amount to a form of coercion that would require reversal. [374-375]
Nothing in the record of a criminal trial supported the defendant's claim that
the judge imposed a harsher sentence because the defendant did not admit
guilt. [375]

INDICTMENT found and returned in the Superior Court Depart-
ment on July 21, 1993.

The case was tried before *Thomas E. Connolly,* J.

*Neil A. Hourihan* for the defendant.

*Robert J. Bender*, Assistant District Attorney, for the Commonwealth.

Smith, J. On July 21, 1993, a grand jury issued three indictments charging the defendant with three incidents of rape of a child under the age of sixteen which occurred on two separate occasions between August 1, 1983, and October 31, 1983. Two of the incidents took place at a drive-in theater in Middleton and the other incident occurred at the defendant's home in Georgetown. All three indictments named the same complainant; she was fifteen years old at the time of the alleged incidents. A Superior Court jury returned a guilty verdict on the charge relating to the Georgetown indictment and not guilty verdicts on the other two indictments.

On appeal, the defendant claims (1) the judge erred by admitting testimony about a prior bad act which allegedly occurred in New Hampshire and by allowing a coworker of the defendant to testify about statements made by the defendant regarding the New Hampshire incident; (2) the Commonwealth engaged in a pattern of gender bias depriving the defendant of his constitutional right to an impartial jury because the Commonwealth used peremptory challenges against nine men during jury selection; (3) the judge committed various errors while instructing the jury; (4) the judge erred by denying the defendant's request to instruct the jury on jury nullification; (5) the judge erred by denying the defendant's motions to obtain the complainant's psychiatric or counseling records for review; and, (6) the judge erred in sentencing the defendant.

The Commonwealth introduced the following evidence. After the defendant and his wife had their first baby, the complainant, who is the defendant's niece, frequently visited them and stayed overnight at their home in Georgetown. While she was there, the defendant and his wife allowed the complainant to drink alcohol and smoke marihuana with them.

During the spring of 1983, the complainant was completing her freshman year in high school. After an incident in New Hampshire during the summer of 1983, which we recount later when we discuss the issues, the complainant spoke to the defendant on a frequent basis. She believed at this time that the defendant was her boyfriend. After school began in 1983, the defendant took her to a drive-in theater in Middleton where

they engaged in two acts of oral sex which resulted in two of the three indictments.[1]

The complainant testified that about two weeks after the drive-in incident, the defendant told her that he decided it would be all right for them to engage in sexual intercourse. The complainant agreed and they made plans for her to spend the night with him in Georgetown when his wife and children were out of town. On the night in question, the complainant told her parents that she was going to sleep at a girlfriend's house and told her friends that she was going to her uncle's to babysit his children.

The complainant testified that the defendant picked her up at a local school and they drove to his house in Georgetown. While there, the defendant performed oral sex on her. Her mother called the defendant and asked if she was there; her mother had called the girlfriend's house where the complainant was supposed to be staying and was told that she was not there. The defendant told the complainant's mother (his sister) that she was not there. The complainant became frightened and went home. There were no further sexual encounters between the complainant and the defendant.

The complainant married in 1990. By the fall of 1992, the complainant and her husband were experiencing marital difficulties and they began seeing a marriage counsellor. During that time, the complainant told her husband about the incidents with her uncle in 1983.

In December of 1992, the complainant and her husband went to the defendant's home in Georgetown and confronted the defendant and his wife regarding the 1983 incidents. The complainant accused the defendant of sexually abusing her in New Hampshire and on the other occasions. As to the New Hampshire incident, the defendant's wife stated that she knew that it happened but both the complainant and the defendant had denied it at the time. The defendant apologized to the complainant for his conduct, and she and her husband demanded that he seek treatment. However, when the complainant's father heard about her claims that the defendant sexually abused her, he arranged to have the complainant interviewed by the police, and the indictments resulted from that interview.

Both the defendant and his wife testified in his defense. The

---

[1]The jury returned not guilty verdicts on these two alleged rapes.

defendant admitted that he was alone with the complainant in Georgetown when his wife and children were away. He denied, however, that anything of a sexual nature occurred that night.

The defendant also testified about the confrontation that occurred in his home in 1992 when the complainant accused him of sexually abusing her. He admitted that his wife became angry when she heard the complainant's accusations. The defendant also agreed that he had offered an apology to the complainant.

1. *Evidence of prior bad act; The New Hampshire incident.*

Prior to trial, the defendant filed a motion in limine to exclude testimony regarding an incident which allegedly occurred in New Hampshire, prior to the sexual acts for which the defendant was charged. The judge denied that motion.

At the trial, the defendant renewed his objection to the introduction of the evidence concerning the New Hampshire incident. In response to the objection, the judge gave the jury the following limiting instruction:

> "Ladies [and] Gentlemen, the testimony we are about to hear, from what Counsel has indicated to me, concerning certain matters that allegedly took place up in New Hampshire, these are not the subject matters of these indictments. This evidence is being offered for the limited purpose on [*sic*] evidence that may show, allegedly may show, the Defendant's intent, state of mind, modus operandi and pattern and course of conduct and is only being admitted for that purpose and that purpose only."[2]

The complainant testified that in July, 1983, the defendant and his family went to a lake in New Hampshire on a five-day vacation. The complainant was allowed to go with them to help take care of the children. One evening she was sitting on the dock with the defendant and his wife. They had all been drinking beer and smoking marihuana. The wife decided to go to the cabin and sleep. After his wife left, the defendant had the complainant perform oral sex on him. Suddenly, she heard the defendant's wife yell, "Paul, you bastard." The wife ran out on the dock and pushed the defendant and the complainant into the water.

The defendant's coworker, one Ronan, testified for the Commonwealth. He stated that in February, 1993, he asked the

---

[2]The judge repeated this instruction in his final charge to the jury.

defendant why he was so anxious. The defendant replied that ten years earlier, during a vacation at a "camp," he was on a dock with his niece and they had sex. The defendant told Ronan that he was upset because the matter was "resurfacing."

In his testimony, the defendant admitted that he was on the dock with the complainant in New Hampshire. The defendant testified that he only kissed the complainant and touched her breast; the wife testified that she saw a close embrace between the complainant and the defendant. Both the husband and wife testified that what the wife observed between the complainant and the defendant caused a heated argument which resulted in the wife pushing both the complainant and the defendant into the lake.

In regard to Ronan's testimony, the defendant admitted that he had a conversation with him about the New Hampshire incident but insisted that he told him only that the complainant had alleged that he had sexually abused her.

On appeal, the defendant claims that the prejudicial effect of the complainant's testimony regarding the prior bad act in New Hampshire far outweighed the probative value of such testimony and that there was no relevant probative purpose for its admission. He argues that because the offense of rape of a child requires no specific intent, the prior bad act testimony was not needed to show intent, state of mind, modus operandi and pattern or course of conduct and could only be relevant for the improper purpose of showing propensity to commit the crime charged.

" '[W]hen a defendant is charged with any form of illicit sexual intercourse, evidence of the commission of similar crimes by the same parties though committed in another place, if not too remote in time, is competent to prove an inclination to commit the [acts] charged in the indictment . . . and is relevant to show the probable existence of the same passion or emotion at the time in issue.' " *Commonwealth* v. *Barrett*, 418 Mass. 788, 794 (1994), quoting from *Commonwealth* v. *King*, 387 Mass. 464, 470 (1982). The incident in New Hampshire took place some two months before the incident in Georgetown. It, therefore, was not too remote. See *Commonwealth* v. *Calcagno*, 31 Mass. App. Ct. 25, 26-28 (1991).

The defendant, however, was never charged with the New Hampshire incident. "In determining whether instances of uncharged misconduct were erroneously admitted in evidence,

we are mindful that such evidence 'is justified on the theory that it relates not to a general disposition to repeat the same type of act because of bad or deficient character, but rather tends to prove other facts relevant to the ultimate issues in the case.' " *Commonwealth* v. *Almeida*, 42 Mass. App. Ct. 607, 611 (1997), quoting from Liacos, Massachusetts Evidence § 4.4.6, at 155 (6th ed. 1994).

The evidence was relevant because the jury needed to understand how the sexual relationship between the complainant and the defendant originated and developed. See *Commonwealth* v. *Young*, 382 Mass. 448, 463 (1981); *Commonwealth* v. *Robertson*, 408 Mass. 747, 749-752 (1990); *Commonwealth* v. *Almeida, supra* at 616 (all three decisions concerned admissibility of evidence relevant to understanding the relationship between the individual defendant and the complainant or complainants).[3] Further, evidence of the New Hampshire incident was relevant because it helped to explain the December, 1992, confrontation between the complainant, the defendant and his wife.

The defendant claims that the repeated references to the New Hampshire incident prejudiced him in the eyes of the jury. However, the judge's careful instructions to the jury about the use of the evidence, given at the time of the introduction in evidence of the details of the New Hampshire incident and also in his final instructions to the jury, limited the evidence to its proper use. We add that it is difficult to find that the admission of the evidence caused prejudice where the jury returned not guilty verdicts on two of the three indictments that charged the defendant with rape.

2. *Jury selection.* The defendant claims that the Commonwealth's use of nine of its ten peremptory challenges to eliminate men from the jury was improper. However, since the defendant did not object at trial, the issue is not properly before the court. "A record in which a party has not had an opportunity to explain the use of peremptory challenges is inadequate to raise a *Soares* [*Commonwealth* v. *Soares*, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979)] violation." *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 550 (1990), quoting from *Com-*

---

[3]Ronan's testimony regarding his conversation with the defendant about the New Hampshire incident was admissible because it was an admission by the defendant that the New Hampshire incident had occurred as testified to by the complainant.

*monwealth* v. *Bourgeois*, 391 Mass. 869, 877-878 (1984). This is because "once the presumption [of the proper use of peremptory challenges] has been rebutted, the allegedly offending party is entitled to an opportunity 'to demonstrate, if possible, that the group members disproportionately excluded were not struck on account of their group affiliation.' If no objections or protests are lodged, opposing counsel is deprived of the opportunity to explain the rationale for the challenges." *Commonwealth* v. *Bourgeois*, 391 Mass. at 877 (citation omitted), quoting from *Commonwealth* v. *Soares*, 377 Mass. at 491. Thus, "even if counsel had made a prima facie showing of impropriety, we cannot say with certainty that the prosecutor more likely than not would have been unable to justify [her] challenge on neutral grounds." *Commonwealth* v. *Santos*, 41 Mass. App. Ct. 621, 627 (1996).

3. *Access to complainant's counseling records.* Before trial, the defendant twice filed motions for the production of the complainant's "psychiatric" or "psychological" counseling records. The motions were denied without prejudice. Neither motion was renewed.

The first motion requested access to the records but did not contain any statement as to their relevance. The second motion only stated that the requested discovery is "relevant and necessary." Defense counsel's affidavit stated that "[b]ased on my knowledge of the case to date, all of the requested discovery is relevant to the case and may contain or lead to the discovery of admissible evidence."

"[T]he defendant must show, at the threshold, that records privileged by statute are likely to contain relevant evidence." *Commonwealth* v. *Bishop*, 416 Mass. 169, 179-180 (1993). See *Commonwealth* v. *Fuller*, 423 Mass. 216, 225-226 (1996). "During this relevancy determination stage, the defendant need not make a showing that the records *actually* contain information that carries, for example, the potential for establishing the unreliability of either the criminal charge or a witness on whose testimony the charge depends. The defendant must, however, advance, in good faith, at least some factual basis which indicates how the privileged records are likely to be relevant to an issue in the case and 'that the quest for its contents is not merely a desperate grasping at a straw.' " *Commonwealth* v. *Bishop*, 416 Mass. at 180, quoting from *People* v. *Gissendanner*, 48 N.Y.2d 543, 550 (1979). The motions were properly denied.

Further, after the motions were denied "without prejudice," the defendant did not file a proper motion, nor were any restrictions imposed on any area of cross-examination of the complainant. She was asked several questions about the nature of the counseling she received, and how the therapy led her to realize that she had been sexually abused by her uncle.

4. *Judge's instructions to the jury.* The defendant has challenged various portions of the judge's final instruction to the jury. In considering the defendant's claims, we have examined the entire charge. We hold that the judge's instructions on reasonable doubt, the Commonwealth's burden of proof, the elements of the crime, and the use to be made of the evidence of the New Hampshire incident were proper.

The judge declined to tell the jury that they may refuse to convict even if the Commonwealth has proved the defendant guilty. Such an instruction is not required. *Commonwealth* v. *Leno,* 415 Mass. 835, 842 (1993). The judge did instruct the jury that the jury has a duty, if they conclude that the defendant is guilty, to return a guilty verdict. This instruction is proper. See *Commonwealth* v. *Dickerson,* 372 Mass. 783, 797 (1977).

The defendant challenges the judge's instructions to the jury given on the second day of deliberations, in response to the jury's report to the court, "We are unable to reach a unanimous vote. We seem to be deadlocked. Where do we go from here?" Upon completing the standard instruction in *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 101-102 (1973), the judge added the following comments:

> "I would now ask you folks — and believe me, I know how hard you're working, I know how hard you're working. I can tell you, folks, I sat for a year now in criminal, both in Suffolk and here. We've had juries out for four and five days on cases. We know how hard you're working, believe me, but I ask you if you could keep what I just said in your mind and return to your deliberations with these thoughts in mind. There is no group of people here in Essex County or any other county in this Commonwealth that are better suited than you folks to decide this case."

The defendant objected to the judge's added comments.

Judges are urged not to stray from the language recommended for use when juries express difficulty in reaching unanimity. We

hold, however, that the challenged language does not amount to a form of coercion that would require reversal.

5. *Sentence.* The defendant argues that he was given a harsher sentence than he deserved because he would not admit guilt. There is nothing in this record that demonstrates that the judge imposed a harsher sentence on the defendant because he did not admit guilt. The sentence was well within the limits set by the Legislature.

*Judgment affirmed.*