## COMMONWEALTH *vs.* KEVIN JUZBA.

No. 97-P-1009.

Hampden. December 4, 1998. - February 12, 1999.

Present: BROWN, PORADA, & GREENBERG, JJ.

*Practice, Criminal,* Assistance of counsel, Disclosure of defense witnesses, Comment by judge, Sentence, Duplicative convictions. *Evidence,* Scientific test, Fresh complaint. *Rape. Indecent Assault and Battery.*

Where, at a rape trial, defense counsel provided ineffective assistance by failing to introduce any evidence of the results of the police chemist's reports, which did not disclose the presence of sperm and which did disclose the presence of blood on an article of the victim's clothing, the defendant was not thereby deprived of an available substantial defense, where the chemist's reports corroborated the defendant's testimony and did not contradict the victim's testimony [321-323], and where the victim had not positively identified the particular article of clothing as worn by her on the day in question [323].

A defendant convicted of rape did not demonstrate that his trial counsel rendered ineffective assistance by failing to object to certain fresh complaint testimony that exceeded the testimony of the victim, where the fresh complaint testimony was only cumulative of other properly admitted evidence, and where the judge's instructions to the jury on their use of fresh complaint testimony would have dissipated any prejudice. [323-324]

At the trial of a rape case, defense counsel's failure to comply with discovery obligations, which resulted in the judge excluding testimony of a late-produced defense witness, did not amount to ineffective assistance of counsel, where the proposed testimony, while contradicting the victim's testimony, would not otherwise have furthered the defendant's claim that the sexual contact was consensual. [324]

A criminal case was remanded for resentencing, where the record demonstrated that the judge impermissibly considered the veracity of the defendant's testimony at trial in imposing a sentence. [324-325]

In the circumstances of a trial of indictments alleging rape and indecent assault and battery, the conviction and sentence on the latter charge were duplicative. [325]

INDICTMENTS found and returned in the Superior Court Department on March 26, 1996.

The cases were tried before *Francis X. Spina,* J.

*Eric S. Brandt,* Committee for Public Counsel Services, for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

PORADA, J. On appeal from his convictions of rape (second offense) and indecent assault and battery, the defendant claims that his trial counsel was ineffective in failing to introduce in evidence an exculpatory police chemist's report; to object to inadmissible fresh complaint testimony; and to inform the Commonwealth of a potential defense witness until the first day of trial in violation of her pretrial obligations. The defendant also claims that the case must be remanded for resentencing because the judge, in imposing the sentence, improperly relied on his express personal belief that the defendant had given false testimony. We affirm the conviction for rape but remand the case to the Superior Court for resentencing and reverse the conviction for indecent assault and battery for the reasons stated.

We summarize the pertinent evidence. On a stormy February evening, the victim, who was twenty-six years old and suffered from cerebral palsy, decided to spend the night in the home where she was baby-sitting. She went to sleep in a room which her employer had rented to the defendant but which she customarily used when she stayed overnight. The defendant was not home when she went to bed. Later that evening, the defendant returned home and demanded that the victim leave the room. The victim testified that when she refused, the defendant pulled her from the bed, pinned her to the floor, and choked her to unconsciousness. When she regained consciousness, she testified that her pajama bottoms and underwear were off and the defendant, who was naked, was lying on top of her. She testified that she attempted to fight the defendant off but he began choking her, causing her to black out for a second time. When the victim next awoke, the defendant was sitting on the bed, smoking a cigarette. The victim testified that she put her pajamas back on and fled the room. The victim then drove to a hospital where she told emergency room personnel that she had been raped, that she did not know if the defendant had penetrated her, and was uncertain if the defendant had ejaculated. The victim also reported that she had not had a prior romantic relationship with the defendant.

The doctor, who examined the victim after the alleged rape,

testified that her examination revealed bruises on her neck, rib cage, and back; a slight tenderness at the opening of the vagina; and a one centimeter vaginal laceration, which was oozing blood slightly and appeared to be fresh. The doctor stated that she could not say how old the laceration in the vagina was and that the laceration was unusual in consensual sex or in rape cases.

The defendant testified that the victim and he had an intimate relationship prior to the evening in question and that any sexual activity on the night in question was consensual. He testified that he did not know if penetration occurred and that he had not ejaculated during the sexual activity. He also testified that the victim became upset and aggressive when he told her he was moving out of the apartment and that he had to use force to restrain her from hitting him. He further testified that the teeth marks and bruises on the victim were precipitated by a "rough-housing" session with her and the children for whom she was baby-sitting the day before the incident.

A State police officer testified that she took a statement from the victim in the emergency room during which the victim asserted that she had been raped by the defendant and that the defendant, immediately following the incident, and while he was smoking a cigarette, had said to her, "It was good for me; was it good for you?" Another State police officer testified that the defendant, when questioned about the incident, denied that he had raped the victim and said that the sex was consensual. The officer also testified that he observed a scratch on the defendant's neck, which the defendant was unable to explain. At trial, the defendant testified that he was scratched by the victim during the incident.

1. *Ineffective assistance of counsel.* (*a*) *Police chemist's test results.* The defendant claims his counsel was ineffective because she failed to introduce in evidence results in the police chemist's lab report which revealed that the vaginal specimens taken from the victim did not disclose the presence of sperm cells or seminal fluid and that a pair of underpants tested positive for the presence of blood. The defendant argues that this evidence was material because the absence of sperm and seminal fluid would buttress his claim that there was no penetration. He also claims that the bloodstain would have shown that the laceration in the victim's vagina was probably present prior to the incident in question because the victim had worn the

underpants before, but not after, the incident, thus rebutting the Commonwealth's reliance upon the laceration as evidence of penetration.

There is no question that defense counsel's performance fell below what was expected from an ordinary fallible lawyer, *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), in either failing to secure the attendance of the police chemist to testify to the results of his examination or in proffering so much of the report that was admissible under G. L. c. 22C, § 41. Although defense counsel was given numerous opportunities to summons the chemist or to provide a statutory basis for the admissibility of the report, she never filed a motion to summons the chemist, requested a continuance to secure his attendance, or proffered so much of the report as was admissible under G. L. c. 22C, § 41.

Defense counsel was apparently unaware of the provisions of G. L. c. 22C, § 41, which provide that a certificate by a State police chemist of the results of his "analysis . . . for the presence of a sperm cell or cells or seminal fluid . . . shall be prima facie evidence of the presence of a sperm cell or cells or seminal fluid." G. L. c. 22C, § 41, inserted by St. 1991, c. 412, § 22. Although the statutory language used refers to the admissibility of the certificate as prima facie evidence of the presence of a sperm cell or cells or seminal fluid, the statute was obviously intended to provide for the admissibility of the results of the police chemist's examination by means of a certificate for the presence, as well as the absence, of sperm or seminal fluid. In acting as counsel for a defendant accused of rape, an ordinary, fallible lawyer would have been expected to know of the existence of this statute, particularly when the judge had given counsel days to return to court with supporting law for the admissibility of the report. Cf. *Commonwealth* v. *Childs*, 23 Mass. App. Ct. 33, 36-37 (1986), 400 Mass. 1006 (1987).

The question then becomes whether her failure to do so resulted in the likely loss of an available, substantial defense. *Commonwealth* v. *Saferian*, 366 Mass. at 96. We do not believe it did. At best, the test results showing the absence of sperm or seminal fluid simply corroborated the defendant's testimony that he did not ejaculate. These test results did not contradict the victim's version of the incident for the victim had admitted that she was uncertain whether the defendant had ejaculated or

had penetrated her. Nor did these test results rebut the Commonwealth's reliance on the results of victim's medical examination following the incident disclosing a fresh laceration within the vagina and tenderness at the vaginal opening as proof of penetration. See *Commonwealth* v. *Elder,* 389 Mass. 743, 753 (1983) (evidence of bruises to the vaginal area are relevant to the proof of rape). Accordingly, given the fact that the Commonwealth need not prove ejaculation to establish the crime of rape, better work would not have accomplished something material for the defendant. *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 & n.10 (1977).

Similarly, we do not think that the defendant was likely deprived of an otherwise substantial defense by failing to introduce in evidence the results of the tests on the underpants. See *Commonwealth* v. *Medina,* 20 Mass. App. Ct. 258, 261 (1985), citing *Commonwealth* v. *Bernier,* 359 Mass. 13, 19 (1971). The admissibility of this evidence, as noted by the trial judge in his colloquy with counsel, and its weight were questionable because not only had those underpants not been positively identified as those worn by the victim on the day in question, but also it was unknown how long the bloodstain had been on those pants. In addition, the value of this evidence would have been undercut by the fact that the tests performed by the chemist also disclosed blood in the victim's genital specimens, lending as much credence to the Commonwealth's argument that the laceration occurred during the incident as the defendant's argument that it occurred prior thereto. In these circumstances, we cannot say that the failure to introduce the test results on the underpants deprived the defendant of an available substantial defense. *Commonwealth* v. *Saferian,* 366 Mass. at 96.

(*b*) *Fresh complaint testimony.* The defendant claims that his trial counsel was ineffective in failing to object to a statement included in the fresh complaint testimony of a State police officer that the defendant told the victim following the sexual assault, "It was good for me; was it good for you?" Because the victim had not testified that the defendant made this statement to her, the defendant argues the statement was inadmissible because it introduced new facts, which could be used to fill gaps in the Commonwealth's case, *Commonwealth* v. *Scanlon,* 412 Mass. 664, 670 (1992), and was prejudicial because it suggested penetration. *Commonwealth* v. *Flebotte,* 417 Mass. 348, 353 (1994). While we think that counsel should have objected

to this evidence, *Commonwealth* v. *Sugrue*, 34 Mass. App. Ct. 172, 173-174 (1993), we do not agree that the defendant was prejudiced thereby. This evidence, rather than filling gaps, was cumulative of other evidence suggesting that the act of intercourse had been completed, in particular the defendant's own statement to the police that he had engaged in consensual sex with the victim. In addition, contrary to the defendant's argument, we think the judge's instructions on fresh complaint would have dissipated any prejudice to the defendant. *Commonwealth* v. *LeFave*, 407 Mass. 927, 941 (1990). The judge repeatedly told the jury that fresh complaint testimony was not to be used as substantive evidence to prove the crime occurred but rather was limited in its use to determining the credibility of the victim, and that if the fresh complaint witness's testimony differed in any significant detail from the victim's, the jury could consider this evidence as detracting from her believability. In these circumstances, we cannot say that the defendant was prejudiced by trial counsel's failure to object.

(*c*) *Failure to call a witness.* The defendant argues that trial counsel was also ineffective in failing to comply with her discovery obligations under the pretrial conference report to notify the Commonwealth in advance of trial of her intent to call as a witness the defendant's friend, Kenneth Demerski. Because of her failure, the trial judge precluded this witness from testifying. The defendant argues that he was prejudiced by his counsel's failure to do so because this witness would have rebutted the victim's assertion that she was not interested in a romantic relationship with the defendant.

While we do not have the benefit of this witness's testimony, defense counsel at trial did indicate that Demerski would testify that the victim was interested in the defendant and that he had been present on a number of occasions when the victim telephoned the defendant or followed him around. Thus, this testimony at best would have contradicted the victim's testimony that she was not interested in the defendant, but it would not have diffused the Commonwealth's evidence that sexual activity was nonconsensual in light of the bruises on the victim's body which were consistent with her version of events. In these circumstances, we cannot say that better work would have accomplished something material for the defense. *Commonwealth* v. *Satterfield*, 373 Mass. at 115 & n.10.

2. *Sentencing.* The defendant argues that the case should be

remanded for a new sentencing hearing, because the trial judge in sentencing the defendant took into consideration the veracity of the defendant's testimony at trial. Our review of the record indicates that this is so based on the following comments made by the judge: "I just want to tell you why I'm imposing the sentence . . . . I found his testimony to be absolutely preposterous. . . . He has absolutely no concern for the truth, and he has absolutely no concern for this court." We agree with the defendant that these comments indicate the judge impermissibly considered the veracity of the defendant's testimony. *Commonwealth* v. *Coleman*, 390 Mass. 797, 803-810 (1984). *Commonwealth* v. *Souza*, 390 Mass. 813, 816-818 (1984). *Commonwealth* v. *Gresek*, 390 Mass. 823, 829-832 (1984). Accordingly, the case must be remanded for resentencing. *Commonwealth* v. *Coleman*, 390 Mass. at 810.

3. *Conviction of indecent assault and battery.* To support a conviction of indecent assault and battery, the Commonwealth must submit proof that the defendant committed separate and distinct acts from the acts constituting the crime of rape. *Commonwealth* v. *Thomas*, 401 Mass. 109, 119-120 (1987). Viewing the evidence in the light most favorable to the Commonwealth, it would appear that the victim testified to no other contact with the defendant other than that which forms the basis for the Commonwealth's proof of the crime of rape. However, we need not determine whether there was any other evidence which would support two distinct acts, since the judge did not instruct the jury that the conviction must be based on separate acts. *Commonwealth* v. *Thomas*, 400 Mass. 676, 681 (1987). See *Commonwealth* v. *Sanchez*, 405 Mass. 369, 381-382 (1989). We conclude, therefore, that the conviction for indecent assault and battery was duplicative and the conviction and sentence must be set aside.[1]

In sum, on the indictment for rape the sentence is vacated, and the case is remanded for resentencing. On the indictment for indecent assault and battery, the judgment is vacated, the verdict is set aside, and the indictment is to be dismissed.

*So ordered.*

---

[1]This issue was not raised by the parties, but we are not confined in the interest of justice only to the issues or theories advanced by the parties. *Commonwealth* v. *Elder*, 389 Mass. 743, 746 & n.6 (1983).