COMMONWEALTH *vs.* ZANE Z., a juvenile.

No. 99-P-517.

Barnstable. October 17, 2000. - March 9, 2001.

Present: ARMSTRONG, C.J., BECK; & RAPOZA, JJ.

*Indecent Assault and Battery. Rape. Juvenile Court,* Delinquent child. *Practice, Criminal,* Instructions to jury, Verdict, Argument by prosecutor. *Jury and Jurors. Evidence,* Privileged communication, Communication with social worker, Relevancy and materiality. *Privileged Communication.*

Discussion of the right of a juvenile to a unanimous verdict in a criminal proceeding and the circumstances under which a specific unanimity instruction is required. [138-139]

In the circumstances of prosecution of complaints in juvenile court alleging indecent assault and battery and rape of a child, the judge's refusal to give a specific unanimity instruction created a significant likelihood that the conviction of rape [139-141] and the conviction of indecent assault and battery [141] were based on a nonunanimous verdict; a new trial was required.

The record of proceedings on a criminal defendant's request, under the procedures set forth in *Commonwealth* v. *Bishop,* 416 Mass. 169 (1993), for investigative records of the Department of Social Services pertaining to the victim's mother did not demonstrate with sufficient particularity what records were sought and what relevancy they might have to the defense [141-145], and the defendant's request with respect to other counseling records of the victim likewise did not demonstrate the records' relevance [145-147]; the judge did not abuse his discretion in denying the defendant's requests.

COMPLAINTS received and sworn to in the Barnstable County and Plymouth Town Division of the Juvenile Court Department on September 16, 1997.

A motion for access to privileged records was heard by *Louis D. Coffin,* J., and the cases were tried before *Richard P. Kelleher,* J.

*Paul J. Machado* for the juvenile.

*Linda A. Wagner,* Special Assistant District Attorney (*Lisa*

*Edmonds*, Assistant District Attorney, with her) for the Commonwealth.

BECK, J. A Barnstable Juvenile Court jury found the juvenile delinquent on complaints charging indecent assault and battery of a child under the age of fourteen, G. L. c. 265, § 13B, and rape of a child under the age of sixteen, G. L. c. 265, § 23. On appeal, the juvenile argues that (1) the trial judge erred in denying the juvenile's written request for a specific unanimity instruction; (2) the motion judge erred in denying the juvenile's request for production of certain Department of Social Services and counseling records pursuant to *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993); and (3) the prosecutor's closing argument created a substantial risk of a miscarriage of justice. As to the first issue, we conclude that this case is governed by *Commonwealth* v. *Conefrey*, 420 Mass. 508 (1995), and we therefore reverse.

1. *Facts.* In the spring of 1997, the juvenile was fifteen years old, and the victim was eight years old. They had been neighbors for five years. The victim often played with the juvenile and his younger brother, who was about her age. She was also very close to the juvenile's mother.

In early July, 1997, the victim asked the juvenile's mother whether sex is when a man puts his penis in a woman. Later that day, the victim disclosed the following incidents which were alleged to have occurred some time between March 31, 1997, and June 3, 1997.

One day when the victim was wearing shorts, the defendant, his younger brother, the victim, and her younger brother were playing in the woods near the victim's house. The defendant sent the two younger boys on a "mission." He then ordered the victim to lie face down on the ground. When she looked back, she saw that the juvenile had "[taken] out his penis." The juvenile then lay on top of her rubbing his penis against the part of her underwear that was covering her vagina. He told her to move her body up and down "[l]ike . . . how you do a push up." When they heard leaves rustling, signaling the return of the boys, the juvenile and the victim got up. It was not entirely clear from the victim's testimony whether this conduct occurred more than once.

On another occasion, the juvenile locked the younger boys out of the juvenile's bedroom, sat in a chair, and told the victim to suck his penis. The juvenile's penis was in her mouth "but there was . . . boxer fabric over it." The juvenile got up when he heard the younger boys opening the door with a coat hanger.

In the course of the investigation of the events just recounted, the victim was taken to the emergency room of a nearby hospital. During that visit, the victim revealed that her grandfather had also been sexually abusing her. He "would take out his penis and . . . have [the victim] rub it," while she sat in his lap when he babysat. This abuse apparently occurred during the same time period as the incidents involving the juvenile.

One year before the juvenile's trial, the grandfather pleaded guilty to two counts of indecent assault and battery of a child. G. L. c. 265, § 13B. He was sentenced to two and one-half years in a house of correction, one year to serve and the balance suspended, with ten years' probation. By agreement of the parties, the jury were made aware of this information.

2. *Specific unanimity instructions.* Some time before the end of the trial, defense counsel filed a document entitled "Defendant's Request for Jury Instructions." This document consisted of eleven numbered paragraphs. Paragraph eleven, citing *Commonwealth* v. *Conefrey*, 420 Mass. 508, requested the following instruction on unanimity:

> "I instruct you that your decision in this case must be unanimous. In other words, you cannot find the defendant guilty of any charge unless each one of you, individually, is convinced beyond a reasonable doubt of the truth of that charge against him.

> "[I] further instruct you that where evidence has been presented of more than one incident for a particular charge, your verdict must be unanimous as to a specific act that is the basis of any finding beyond a reasonable doubt on that charge. It is not enough, for example, that each of you concludes that some incident has been proved; there must be unanimous agreement on a particular incident, and if there is not, you must find the defendant not guilty on that charge."

The judge did not give the requested instruction. Instead he instructed the jury as follows:

> "Your verdicts have to be unanimous which means that all six of you have to agree. You can't decide the cases five to one or four to two. When you go to your jury room, you have to reach a unanimous verdict. All six jurors agreeing. . . .

> "You don't have to decide each case the same way. . . . You could conceivably find [the juvenile] delinquent of one complaint and not delinquent of the other. But in each case your verdict has to be unanimous."

At the conclusion of the judge's instructions, defense counsel asked the judge to give instruction number seven, concerning prior consistent statements. The judge agreed. Counsel then requested the specific unanimity instruction set out in paragraph eleven. When the prosecutor interjected that the judge had given that instruction, defense counsel explained, "if some of them think the incident in the woods happened, some of them think that maybe the incident in the bedroom happened, then —." The judge appears to have broken in and said, "No, I'm not going to do that." Defense counsel responded, "Well, my objection then for the record on that." Counsel reiterated his objection after the jury retired, "in case the microphone didn't pick [it] up." The judge responded "okay."

(a) *Applicable legal standards.* While not guaranteed by either the Federal Constitution or the Massachusetts Declaration of Rights, the right to a unanimous verdict is "recognized at common law as a means to ensure that the government has met its burden of proving all facts necessary to show the defendant's guilt." *Commonwealth* v. *Conefrey*, 420 Mass. at 512 n.7. "A general unanimity instruction informs the jury that the verdict must be unanimous, whereas a specific unanimity instruction indicates to the jury that they must be unanimous as to which specific act constitutes the offense charged." *Commonwealth* v. *Keevan*, 400 Mass. 557, 566-567 (1987). "[A] [specific] unanimity instruction is required only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged . . . . The possibility of

disagreement exists where the defendant is accused of a number of unrelated incidents, such as alleged rapes at different times or places, leaving the jurors free to believe different parts of the testimony and yet convict the defendant." *Commonwealth* v. *Ramos*, 31 Mass. App. Ct. 362, 366-367 (1991), quoting from *People* v. *Burns*, 196 Cal. App. 3d 1440, 1458 (1987).

The first Massachusetts case "address[ing] a trial judge's refusal to give a specific unanimity instruction after a proper request and a timely objection, where alternate incidents could support a conviction," was *Commonwealth* v. *Conefrey*, 420 Mass. at 512. (In previous cases challenging the failure to give such an instruction, there was neither a proper request nor a timely objection. See, e.g., *Commonwealth* v. *Comtois*, 399 Mass. 668, 675-677 [1987]; *Commonwealth* v. *Lemar*, 22 Mass. App. Ct. 170 [1986]; *Commonwealth* v. *Liberty*, 27 Mass. App. Ct. 1, 9-10 [1989].) In *Conefrey*, the court determined that "a judge should give a specific unanimity instruction if a defendant request[s] it in accordance with the normal procedure of Mass. R.Crim.P. 24(b), 378 Mass. 895 (1979)." *Id.* at 513. See *Commonwealth* v. *Lemar*, 22 Mass. App. Ct. at 172.

(b) *Legal analysis*. In this case, the juvenile argues that the judge's refusal to give the requested instructions was reversible error because either the incident in the woods or the incident in the bedroom could have supported the jury's finding of delinquency. The Commonwealth argues that there was only "one discreet act of rape (oral-penile), which occurred in the juvenile's bedroom." The record does not support the Commonwealth's argument.

Neither the Commonwealth's opening statement nor its closing argument communicates its theory that the bedroom incident constituted the rape and the incident in the woods was the indecent assault and battery. In fact, the only time the prosecutor used the words rape or intercourse in her closing argument was in connection with the incident in the woods. The prosecutor asked the jury to "remember exactly what [the victim] said. . . . [The victim] remembered seeing [the juvenile's] penis . . . [and] feeling it rubbing up against her vagina." Then the prosecutor rhetorically asked, "Does [the victim] know what the definition of intercourse is? No. She's eight years old.

But she told you that she felt it right there . . . ." Contrast *Commonwealth* v. *Mamay*, 407 Mass. 412, 418-419 (1990) (prosecutor consistently highlighted different actions comprising the indecent assault and battery charges in arguing for conviction on those charges). While it may be true that the bedroom incident is the more obvious candidate for a finding of rape because the testimony describing penetration was clear, the jury were instructed correctly that they were free to believe all or any part of the testimony they heard at trial. They could have concluded, as the Commonwealth implied in closing argument, that a rape occurred in the woods. Moreover, there was no fresh complaint corroboration of the incident in the juvenile's bedroom.

The rape instructions compounded the problem. In defining rape as natural or unnatural intercourse, the judge told the jury the following: "Natural intercourse consists of the insertion no matter how slight of the penis into the vagina . . . . [T]he act is complete upon penetration, . . . no matter how slight." That instruction was not applicable to the bedroom incident. There was no evidence of "natural intercourse" there. Having been given a natural intercourse instruction, in the absence of limiting language, the jury would have been warranted in concluding that it could apply the instruction to the incident in the woods. Compare *Commonwealth* v. *Baldwin*, 24 Mass. App. Ct. 200, 204-205 (1987) (intrusion into the vagina itself is not required to make out wrongful penetration; touching of vulva or labia sufficient). Therefore, as given, the instruction that rape includes natural and unnatural intercourse could have applied to either the incident in the woods or the incident in the bedroom. (During their deliberations, the jury requested that the judge again define sexual intercourse and unnatural sexual intercourse. The judge repeated his original instructions almost verbatim.)

"[W]here[, as here,] the defendant request[s] a specific unanimity instruction and where there is a significant likelihood that [a] conviction resulted from different jurors concluding that the defendant committed different acts, the judge should give the requested . . . instruction." *Commonwealth* v. *Conefrey*, 420 Mass. at 514. "[T]he judge's failure to give the requested specific unanimity instruction allowed the jury to return a non-

unanimous verdict," which in essence is no verdict at all. *Id.* at 516. Cf. *Commonwealth* v. *Grandison*, 433 Mass. 135, 146-147 (2001). We therefore reverse the finding on the rape charge.

(c) *Indecent assault and battery.* Our conclusion about the specific unanimity instructions as to the rape charge requires that we consider the indecent assault and battery finding as well, despite the juvenile's failure to raise the issue. See *Commonwealth* v. *Simpson*, 428 Mass. 646, 648-649 (1999); *Commonwealth* v. *Juzba*, 46 Mass. App. Ct. 319, 325 n.1 (1999), citing *Commonwealth* v. *Elder*, 389 Mass. 743, 746 & n.6 (1983). First, under the reasoning set forth above, the necessity for a specific unanimity instruction also applies to the indecent assault and battery charge. The jury could have found the juvenile delinquent by reason of indecent assault and battery for either incident.

Second, "there is a theoretical possibility that the jury could base both the rape and indecent assault and battery convictions on the same act." *Commonwealth* v. *Black*, 50 Mass. App. Ct. 477, 478 (2000). The trial judge did not instruct the jury that a finding of delinquency by reason of rape had to be based on facts different from those supporting a finding of delinquency by reason of indecent assault and battery. See *Commonwealth* v. *Juzba*, 46 Mass. App. Ct. at 325 n.1. It is possible that the findings against the juvenile are duplicative. See *id.* at 325. Usually, "[i]f there is no indication in the record that [the] possibility [of duplicative findings] is insubstantial, the conviction of the lesser included offense will be vacated to avoid the possible miscarriage of justice." *Commonwealth* v. *Black, supra* at 478-479. However, in this case we have no way of knowing the basis for the jury's finding of delinquency on the indecent assault and battery charge. We must therefore reverse as to that charge as well.

3. *The Bishop materials.* Months before trial, the juvenile sought Department of Social Services (DSS) records concerning the victim's mother pursuant to *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993). In a "Bishop Stage 2 Memorandum" filed with the motion, the juvenile also discussed his interest in counseling records of the victim. *Bishop, supra* at 174-184, as "revised" by *Commonwealth* v. *Fuller*, 423 Mass. 216, 226

(1996), see *Commonwealth* v. *Oliveira*, 431 Mass. 609, 614 (2000), lays out a five-step process for determining whether a defendant should have access to qualified privileged communications of the victim in a case of rape or sexual abuse. The juvenile argues that the judge erred in his handling of the first two stages.

Stage one in *Bishop*, 416 Mass. at 181, concerns the question whether the records sought are privileged. It authorizes the criminal defendant to proceed as follows:

> "[The defendant] *moves to compel production* of the various records pertaining to the complainant. If the complainant or the keeper of the target records refuses to produce the records because of a statutory privilege against disclosure, the fact is brought before the judge. The judge shall then decide whether the records are privileged. *The judge shall then reduce his or her decision, and the reasons therefor, to writing, with specific reference to the privilege or privileges claimed and found*, if any." (Emphases supplied.)

Stage two under *Bishop* required that the defendant, upon notice of the judge's written finding on privilege, "submit to the judge, in writing, the theory or theories under which the particular records sought [were] likely to be relevant to an issue in the case." *Id.* at 181-182. If the defendant failed to carry his burden of showing that the records were likely to be relevant, the judge denied the request. If, on the other hand, the defendant showed that the records were likely to be relevant, the judge was required to review the records in camera, to determine whether the defendant should have access to the materials. *Id.* at 182. The judge's decision is subject to review for abuse of discretion. *Commonwealth* v. *Pare*, 43 Mass. App. Ct. 566, 572 (1997), *S.C.*, 427 Mass. 427 (1998). *Commonwealth* v. *DeMaria*, 46 Mass. App. Ct. 114, 120 (1999).

Although the heightened standard for undertaking an in camera review of records privileged under G. L. c. 233, § 20J, as set out in *Commonwealth* v. *Fuller, supra* at 226 (defendant's motion for production of records must demonstrate "a good faith, specific, and reasonable basis for believing that the records will contain exculpatory evidence which is relevant and

material to the issue of the defendant's guilt"), now applies to requests "for *any* privileged documents," such as those at issue here, *Commonwealth* v. *Oliveira, supra* at 617 (emphasis added), the impact of *Fuller* on the *Bishop* standard was not clear at the time of trial of this case. See *Commonwealth* v. *Pare*, 427 Mass. at 429 ("revised protocol" provided by *Fuller* not applicable because *Fuller* not decided until after Pare's trial). Compare *Commonwealth* v. *Tripolone*, 425 Mass. 487, 489 (1997) (expansive language stating that standard and procedures in *Fuller* better than those in *Bishop*, but limiting holding to records privileged under G. L. c. 233, § 20K), with *Commonwealth* v. *Beal*, 429 Mass. 530, 533 n.2 (1999) (defendant had to satisfy the requirements of *Fuller* for whatever records he might request), and *Commonwealth* v. *Neumyer*, 432 Mass. 23, 25 (2000) (referring to another application of the *Bishop-Fuller* procedure), both decided after the trial in this case. Indeed none of the participants recognized the relevance of *Fuller*, as recently clarified in *Oliveira*. We therefore proceed to analyze the judge's decisions concerning the records the juvenile sought under *Bishop*.

As set out in his memorandum, the juvenile's theory of the case to which he claimed the records are relevant was as follows. The victim was living in a "fractured, dysfunctional and abusive home." The victim's father was no longer living at home, apparently as the result of the parents' divorce. The victim's mother was "pursu[ing] a course of relationships," neglecting her children, and making "excessive use of corporal punishment." According to this theory, the victim falsely accused the juvenile as a "safer mechanism . . . to disclose the disturbing secrets of sexual molestation that she was subjected to by her grandfather." He claimed that the records he sought would shed light on his "theories of motive, bias and state of mind," including the victim's fear of telling her mother about her abuse at the hands of the mother's father. The juvenile later filed an affidavit suggesting, on the basis of a consultation, that the victim was confabulating the juvenile's abuse with the grandfather's abuse.

There is no dispute that the judge considering the *Bishop* issues (who was not the trial judge) did not reduce his decisions

and the reasons for them to writing, as the cases require, at least for the stage one determination of privilege. *Commonwealth* v. *Bishop*, 416 Mass. at 181. See *Commonwealth* v. *Pare, supra* at 430. Instead, he announced them in open court. On appeal, the juvenile requests that we remedy this failure by remanding the *Bishop* issues to the juvenile court "for written findings as to the determinations of privilege and relevancy."

We address the DSS records first. The juvenile's motion sought "any and all [DSS] records relative to any investigation and findings pertaining to [the victim's mother]." His supporting memorandum explained that "discovery [he had] received . . . [revealed] that [the victim's mother's] neglect of her children had resulted in a formal investigation by [DSS] and a finding of neglect and an excessive use of corporal punishment and fear on the part of the children." Noting that the juvenile had already received the 51A report on the juvenile and the grandfather, the judge remarked several times that he was "unable to make any finding that any of [the DSS records were] privileged because [he was] not specifically sure what it was that counsel was seeking."

Toward the end of the hearing, defense counsel explained as follows:

> "[T]he summons that I had sent out that was disregarded was the notes, records and reports relative to the investigation. Specifically, on or about June and July of '97. That would encompass more than just these allegations and DSS. Any investigation as initiated by the father's . . . complaints about physical abuse and things of that nature. . . . That's not what I have been provided. I don't see how that's privileged in any way. That doesn't [appear to include] any confidential communications. . . ."

The judge's response was equivocal. "Well, you might be right . . . . I'm saying I don't know. . . . I'm not in position to say what they have is privileged or not, because I don't know what they have, and I don't know what's out there."

The record does not include copies of the summons counsel sent to DSS, the response denying his request, the documents

he did receive, or the source of those documents. Nor is there a transcript of the hearing he says was held on his motion in July. (The docket sheet does not assist us in determining whether there was a hearing prior to the September 18, 1998, hearing described on the docket as "J. Coffin addresses court re: motions.") On the record before us, the juvenile has not persuaded us that the judge's decision was an abuse of discretion. See *Commonwealth* v. *DeMaria*, 46 Mass. App. Ct. at 120. See also *Commonwealth* v. *Pare*, 43 Mass. App. Ct. at 572. We see no point in remanding for written findings without some showing of what might be accomplished.

As to the victim's counseling records, the juvenile's request was not in the form of a motion but arguably was implied in his *Bishop* stage two memorandum. Although it appears likely that the juvenile failed to make the motion stage one requires, see *Commonwealth* v. *Bishop*, 416 Mass. at 181, the judge ruled on the question, and the Commonwealth did not raise this issue in the juvenile court or on appeal. In view of the need for a new trial, we address the issue.

It is clear that the parties and the judge were in possession of a letter from a social worker who saw the victim for a month following her disclosures. The letter apparently summarized what the victim told the social worker about the incidents of sexual abuse. The judge "assume[d] that [the social worker was] in possession of more notes and materials which describe the nature of her counseling [the victim]." Trial counsel told the judge that "there's been no assertion of privilege," perhaps referring to the text of the letter from the social worker, as well as his own apparent failure to move to compel. However, the judge found that the social worker was licensed and that her records were privileged. See G. L. c. 112, §§ 130, 135A. Even the juvenile referred to the social worker as "MSW, LICSW," and titled his memorandum as a "Stage Two submission." On appeal, the juvenile does not press the privilege point as to the social worker. Because the juvenile does address the issue of relevance, if only indirectly, we consider that argument.

The judge ruled that the juvenile's "theory of relevance . . . [did] not satisfy the criteria set out in *Bishop*." He found there was nothing to suggest that the social worker's materials would

support the juvenile's theory of the case, or that there was anything else in the record to support the theory. Indeed, he concluded; "looking at the 51A that was submitted to me, [all] the reports from the social worker notes that are attached to the 51A- or 51B-type investigation cut against [the juvenile's theory]." (None of these documents is included in the record.) The judge also observed that because the counseling was all postevent rather than in the context of "dysfunction or recent mental problems or anything like that," the records were even less likely to be relevant. Compare *Commonwealth* v. *Pare*, 427 Mass. at 428-429 (disclosure made during evaluation; defense claimed evaluation suggestive). The judge left open the option of "further inquiry" from the juvenile, but so far as the record reveals, there were no further requests. See *Commonwealth* v. *Bishop*, 416 Mass. at 182 n.8; *Commonwealth* v. *Sosnowski*, 43 Mass. App. Ct. 367, 374 (1997).

On the record before us, the juvenile has not established a factual basis to support his claim that the records he seeks are likely to be relevant to the juvenile's theory, see *Commonwealth* v. *Sosnowski*, 43 Mass. App. Ct. at 373, and not otherwise available. Other than the juvenile's memorandum and the later filed supplemental affidavit of his counsel based on the work of an author whose qualifications were unknown, there were no other exhibits or attachments supporting his claim. Compare *Commonwealth* v. *Pare*, 427 Mass. at 428. The juvenile nevertheless did manage to bring some of these issues to the jury's attention.

Trial counsel effectively argued to the jury that the victim was a "sexualized child" as a result of the grandfather's sexual abuse. The Commonwealth countered by pointing out that the incidents with the juvenile were clearly different from the activities to which the grandfather pleaded guilty.

The tender letter the victim wrote to the juvenile's mother expressing her wish to be her daughter might well support the juvenile's claim that the victim's relationship with her mother was troubled, but the victim's accusation about the woman's son would seem unlikely to further the child's wish to join the juvenile's family. Moreover, in response to defense counsel's questions on cross-examination, the victim acknowledged that

she was afraid to reveal what her grandfather was doing to her because she did not want her mother to be angry with her. The victim also admitted that she had a hard time talking to her mother, but she did not remember telling the juvenile's mother that her mother "physically punish[ed]" her. (At side bar, exploring whether there was a basis for asking these questions, trial counsel said he had a police report and a 51A report.)

Finally, although perhaps desirable, there is no requirement that a judge's finding at stage two be in writing. It was the juvenile's burden to "show . . . that [the social worker's] records privileged by statute [were] likely to contain relevant evidence." *Commonwealth* v. *Bishop*, 416 Mass. at 179-180. The judge did not abuse his discretion in ruling that the juvenile did not carry his burden. As to the status of the juvenile's request for privileged records on retrial, see Mass.R.Crim.P. 13(a)(5), 378 Mass. 872 (1979); *Commonwealth* v. *Marmolejos*, 35 Mass. App. Ct. 1, 3 (1993).

4. *Prosecutor's closing argument.* The juvenile also complains of abuses in the prosecutor's closing argument, including vouching for the victim's credibility; referring to the juvenile as a "grown man"; pandering to the jury's emotions; and characterizing the juvenile's closing argument as speculation. In view of our disposition of the case, we merely comment on these claims of error should they arise again at a new trial. (There was no objection to any of them at trial.)

The prosecutor's question, "Doesn't [the grandfather's plea] show that [the victim] is . . . telling you the truth?" did not constitute vouching for the credibility of the victim. See *Commonwealth* v. *Raymond*, 424 Mass. 382, 391-392 (1997). It was not a declaration "suggest[ing] that the prosecutor knew the truth." *Commonwealth* v. *Lindsey*, 48 Mass. App. Ct. 641, 645 (2000). While not creating a substantial risk of a miscarriage of justice, this question would be better left unsaid at a new trial, at least in this form. Compare *Commonwealth* v. *Pichardo*, 45 Mass. App. Ct. 296, 302-303 (1998).

Whatever motive the prosecutor may have had for referring to the fifteen year old juvenile as a man and noting his size, which was not relevant to the charges against the juvenile, the

jury were well able to see for themselves the appearance of the juvenile. They also heard evidence of his age.

The prosecutor's request that the jury make the juvenile "step up to the plate" as the grandfather had done exceeded the scope of proper closing argument. The suggestion that the grandfather's guilty plea proved that the juvenile was guilty, too, was unwarranted and should not be repeated on retrial.

Finally, the prosecutor's references to the juvenile's closing argument as speculation was not unfair. The juvenile argued several theories as to why the victim would have made false accusations against the juvenile — to get her recently divorced parents' attention, because she was too hesitant to report her grandfather's abuse. It was not unfair for the prosecutor to point out that there was no evidence to support those theories. *Commonwealth* v. *Weaver*, 400 Mass. 612, 615 (1987), on which the juvenile relies is not on point. Moreover, the judge instructed the jury that "[i]t doesn't matter what the lawyers think." He told them that they had to decide the case on the basis of the four witnesses who testified and the two exhibits.

*Judgments reversed.*