## COMMONWEALTH *vs.* DAVID OLIVEIRA.

Bristol. March 9, 2000. - May 19, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Child Abuse. Rape. Indecent Assault and Battery. Practice, Criminal,* New trial, Argument by prosecutor, In camera inspection. *Evidence,* Privileged communication, Communication between patient and psychotherapist, Relevancy and materiality. *Privileged Communication.*

Certain remarks by the prosecutor in closing argument at a criminal trial, to which the defendant did not object and which were not considered on their merits in the defendant's motion for a new trial, did not create a substantial risk of a miscarriage of justice. [612-613]

A criminal defendant convicted of sexual abuse of children adequately raised, on a motion for new trial, the issue of the competence of trial counsel in not seeking pretrial production and in camera review of certain mental health treatment records of one victim, of which counsel was aware and which were, under the then applicable standard, "likely to be relevant" to that victim's credibility; the matter was remanded for review of the records and reconsideration of the motion for new trial. [613-616]

This court stated that the more stringent standard established by *Commonwealth* v. *Fuller,* 423 Mass. 216 (1996), for sexual assault counsellor records under G. L. c. 233, § 20J, applies also to patient-psychotherapist records privileged under G. L. c. 233, § 20B, when access to such records is sought by a criminal defendant. [616-617]

The record of a criminal case did not support the claim of defense counsel on appeal that trial counsel had improperly been denied access to certain impounded records of the Department of Social Services. [617-618]

INDICTMENTS found and returned in the Superior Court Department on February 24, 1994.

The cases were tried before *James F. McHugh, III,* J., and a motion for a new trial, filed on August 11, 1998, was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Catherine B. Sullivan Ledwidge,* Assistant District Attorney, for the Commonwealth.

COWIN, J. Following a jury trial, the defendant was convicted on two indictments charging rape of a child, three indictments charging indecent assault and battery on a child under fourteen, and one indictment charging indecent assault and battery on a person who has attained the age of fourteen. The defendant appealed and we transferred the cases to this court on our own motion. The cases are remanded to the Superior Court for further proceedings consistent with this opinion.

The relevant facts may be summarized as follows. The defendant, David Oliveira, was accused of repeatedly sexually assaulting his girl friend's two daughters, whom we shall refer to as Kathy Ann and Kerri, over a six-year period.[1] Kathy Ann, eighteen years old at the time of trial, testified that, when she was nine years old, the defendant began touching her indecently and had her touch him indecently. These incidents continued regularly for the next two years. Kathy Ann also testified that the defendant had sexual intercourse with her, from the time she was eleven or twelve years old and continuing regularly until she was fifteen years old. Kerri, fifteen years old at the time of trial, testified that the defendant touched her indecently on a regular basis from the time she was seven or eight years old until she was thirteen years old.

While describing the defendant's control and manipulation of the household, Kathy Ann testified that when the defendant was away from home, "[w]e couldn't even go out to buy toilet paper without asking [his] permission." She further testified that on one occasion, "[w]e had no toilet paper and we had to use newspapers, because . . . he didn't call, and my mom didn't want to go out to get toilet paper and have him call and call and call and argue."

When Kathy Ann was ten years old, she first told her mother about the abuse. The defendant persuaded Kathy Ann to tell her mother that she had lied about the incidents and Kathy Ann did so. When she was thirteen years old, Kathy Ann again told her mother about the abuse. This time, when her mother confronted the defendant, he replied, "I won't deny it," and promised to seek counselling. Approximately ten months later, Kathy Ann told her mother that the abuse was continuing. Kathy Ann, her mother, and her grandmother then reported the abuse to the police in July, 1993.

[1]During the time period at issue, the defendant lived with his girl friend, their biological son, and his girl friend's two daughters from prior relationships.

The mother testified as follows. She had not reported the incidents to the authorities earlier and had not broken up with the defendant because he had threatened to kill her or take their son away from her. She believed the defendant's threats because, on other occasions when they had argued, the defendant had taken the boy away. The defendant could be violent and he had hit her and the children in the past.

The defendant testified and denied any abuse. He also presented the testimony of one of his former employees, his sister, and a family friend, all of whom testified to their observations regarding the defendant's interactions with Kathy Ann, Kerri, and their mother: the defendant and the mother were close; he had a loving, friendly relationship with both Kathy Ann and Kerri; and there were no signs of abuse.

Prior to trial, defense counsel, as a result of various motions, was granted access to treatment records of the Department of Social Services (DSS) and the Family Care Center. These sets of records and a statement from Kathy Ann to the police indicated that additional treatment records existed, i.e., they referred to Kathy Ann's treatment by mental health personnel. These additional records include records from a hospital where Kathy Ann was treated after attempting suicide in June, 1993; records from a mental health center to which Kathy Ann was referred by the hospital; and records from the office of a psychiatrist who subsequently treated her (collectively, mental health treatment records). Trial counsel never sought access to these mental health treatment records and it is these records that form the basis of some of the defendant's posttrial motions.[2]

After trial, the defendant filed a timely notice of appeal, which appeal was later stayed by order of the Appeals Court, pending the disposition of further trial court proceedings. The defendant then filed a motion for a new trial in the Superior Court.[3] A hearing on the motion was held before the same Superior Court judge who presided over the trial. The judge denied the motion and the defendant filed a timely notice of appeal. The Appeals Court's stay of the defendant's direct appeal was vacated, and his appeal from the denial of his motion for a new trial was consolidated with his direct appeal. We transferred the cases to this court on our own motion.

[2]The defendant was represented by new counsel on appeal and on the motion for a new trial.

[3]The defendant combined the motion for a new trial with a motion for production of the mental health treatment records.

1. *Standard of review.* We consider first the appropriate standard of review. The motion for a new trial was predicated in part on alleged improper remarks in the prosecutor's closing argument to which no objection was taken at trial. The defendant asserts that the judge considered his claims substantively (on their merits) in his memorandum of decision, thereby resurrecting them for appellate review as if they had been fully preserved at the trial level. We do not agree. The judge followed the procedures set forth in *Commonwealth* v. *Hallet,* 427 Mass. 552, 553-555 (1998). In his carefully crafted memorandum, the motion judge specifically cited *Commonwealth* v. *Hallet, supra,* and made it as clear as the English language permits that he was only considering the defendant's claims to determine whether the challenged remarks created a substantial risk of a miscarriage of justice: "I am considering only whether the prosecutor's statements created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Hallet,* 427 Mass. 552, 555 (1998)." Because the claims were not preserved at trial or resurrected by the motion for a new trial, we limit our review to whether the contested remarks created a substantial risk of a miscarriage of justice.[4]

The first challenged remark of the prosecutor referred to Kathy Ann's testimony that the defendant, a long-distance truck driver, was so controlling and manipulative that her mother could not even go out to buy toilet paper without the defendant's permission when he was away. The defendant claims that this reference to the "toilet paper testimony," admitted only for the limited purpose of "what the witness believed at that time," was improper because the prosecutor urged the jury to consider the testimony for its substantive value as evidence of the defendant's controlling personality. However, Kathy Ann's mother also testified that, when the defendant was away, she was not allowed to go to the store without permission. This testimony *was* admitted for its substantive value. Given this statement, the prosecutor's argument was not improper. Even if the remarks were improper, there was no substantial risk of a miscarriage of justice.

---

[4] The Commonwealth also adhered to our advice in the *Hallet* case: "In opposing the allowance of a new trial motion, the Commonwealth should remind the judge of the consequences of considering an issue on its merits that the defendant reasonably could have raised at or before trial but did not." *Commonwealth* v. *Hallet,* 427 Mass. 552, 555 (1998).

The defendant complains that the prosecutor improperly commented on a subject reserved for expert testimony: "There's a variety of reasons why, social and economic reasons why women stay with men who abuse them and abuse their children."[5] However, the judge observed: "It is a matter of common knowledge that men and women remain bound in abusive relationships." Thus, in the context of this case, the argument was grounded in common sense, not expertise. Further, defense counsel's closing had invited the jury to conclude that the mother was not credible because she failed to report the abuse to the police earlier. The prosecutor's comment was a response to this suggestion.

Finally, the defendant claims that the prosecutor improperly labeled the defendant a liar: "[T]he defendant tells you . . . [that Kathy Ann] confides in him about [her boy friend]. Was that just another example of a bold-faced lie, just like the fathers, one father's always drinking and the other father's always sleeping, designed to make [Kathy Ann] look bad?" Here, the prosecutor was contesting the credibility of the defendant's testimony. The quoted comments are part of the prosecutor's theme that the defendant considered that he was the only good person in the family. The remarks had a basis in the evidence and were not the prosecutor's personal comments on the credibility of the defendant. Cf. *Commonwealth* v. *Kosilek*, 423 Mass. 449, 459-460 (1996). The arguments were not improper. Even if any or all of them had been improper, there was no substantial risk of a miscarriage of justice. *Id.* The evidence against the defendant was strong; none of the challenged remarks went to the heart of the government's case. Further, the judge instructed the jury that summations of counsel were not evidence and that the jury were "the sole and exclusive judges of the facts."[6]

2. *Production of mental health records.* The defendant also

[5]The defendant's objection relates only to so much of the comment as relates to the "social . . . reasons" for the mother's behavior. But the comment must be taken in context. See *Commonwealth* v. *Thomas*, 400 Mass. 676, 682 (1987), citing *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 406 (1978).

[6]Because the prosecutor's comments in closing did not create a substantial risk of a miscarriage of justice, the failure of defense counsel to object to them at trial cannot amount to ineffective assistance of counsel. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 624-625 n.4 (1994) (if counsel's omission does not present substantial risk of miscarriage of justice, no basis for

bases his motion for a new trial on the ground that trial counsel was ineffective in not seeking production of additional treatment records concerning Kathy Ann. These were the records of mental health treatment referred to in the DSS records and in Kathy Ann's statement to the police. The standard here is whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if so, whether it has likely deprived the defendant of an otherwise available substantial ground of defense. See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977); *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The parties do not debate that these mental health treatment records were clearly referred to in other records that had been made available to defense counsel prior to trial, and that trial counsel must have been aware of their existence.

We therefore need resolve initially whether the records would have been discoverable, for, if not, there would be no merit to the claim of ineffective assistance. The defendant maintains that the discoverability of the records is governed by the procedure in effect at the time of trial, *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-182 (1993). The Commonwealth argues that the discoverability issue is governed by *Commonwealth* v. *Fuller*, 423 Mass. 216, 226 (1996), which revised the procedure set forth in the *Bishop* case. The *Fuller* case imposed a greater burden on the defendant with respect to obtaining access to treatment records, and was decided after the trial of this case but before the motion for a new trial was filed. The judge below ruled that, whichever standard applied, there was an insufficient basis for in camera review of the records, even under the "now-superseded *Bishop* standard." We conclude that, for purposes of determining counsel's effectiveness, the appropriate measure is governed by the "likely to be relevant" standard of *Commonwealth* v. *Bishop*, *supra* at 181-182. That was the standard in effect at the time of trial and, because we are here considering whether trial counsel was effective, the issue must be considered under the law that existed at the time of the challenged conduct. If the trial attorney were ineffective, thereby prejudicing the defendant, he cannot be further prejudiced by our applying to him a subsequent change in the law, i.e., the

ineffective assistance of counsel claim, under either Federal or State Constitution).

more stringent standards of *Commonwealth* v. *Fuller, supra,* that did not exist at the time of his counsel's shortcoming.

We thus consider whether the defendant's proffer, filed by appellate counsel in conjunction with the motion for a new trial, met the "likely to be relevant" standard of *Bishop*. The defendant's proffer stated that Kathy Ann's suicide attempt occurred approximately nine months after she revealed the sexual abuse to her mother, during a "tumultuous time" in her family home. The revelation disrupted the family and eventually caused the disintegration of the entire household. Yet, the police were not notified. These factors indicate that the records are likely to be relevant to the issue of Kathy Ann's credibility, particularly because they are likely to reveal evidence of the entire situation in the family of which the defendant had been a part. The proffer is sufficient to meet the standard of the *Bishop* case.

The Commonwealth notes that since the records that were produced (those from DSS and Family Care Center) were not used by the defense at trial, the additional treatment records would not have been of value to the defense either. The fact that the DSS and Family Care Center records were not used at trial does not affect whether other records, produced in different settings and by different caregivers, would have produced exculpatory information. Further, because trial counsel sought so diligently for the DSS and Family Care Center records,[7] we have difficulty conceptualizing a tactical reason for not seeking the mental health treatment records.

Having determined that the records satisfy the *Bishop* relevancy standard, we now turn to the remedy. The defendant seeks a new trial, claiming that the additional treatment records should have been produced and reviewed in camera and that trial counsel was ineffective because he failed to seek such a review of the records before the trial began. The issue of trial counsel's ineffectiveness is dependent on the contents of the records, which will have to be examined by the motion judge.[8] If the records contain nothing relevant, trial counsel was not ineffective: his failure caused no prejudice. *Commonwealth* v. *Laguer,* 410 Mass. 89, 94 (1991). If, however, the records do

---

[7]The defendant filed several motions concerning these records, including a motion to reconsider reviewing the DSS records, filed three weeks before trial, see Part 3, *infra.*

[8]As a result of his decision, the motion judge (who was also the trial judge) did not examine the records.

contain relevant material, defense counsel and the prosecutor are to be permitted access to any relevant portions for the purpose of resolving the issue of the ineffectiveness of trial counsel. The confidentiality and protective order provisions of *Commonwealth* v. *Bishop, supra* at 182, will apply.[9] Defense counsel may then submit another motion for a new trial indicating how the material in the records would have been useful to the defendant at trial and whether defense counsel's failure to obtain the records prior to trial constituted ineffective assistance. Cf. *Commonwealth* v. *Pare*, 427 Mass. 427, 430-431 (1998) (on review of complainant's mental health records, withheld by judge as irrelevant, convictions reversed on ground that records contained substantial relevant material that might have assisted defense at trial). If there is a determination that the records do contain relevant material and that there should be a new trial, then access to the records for purposes of a new trial is to be governed as well by the standards of *Commonwealth* v. *Bishop, supra* at 181-182.[10]

Both parties, and the judge, proceeded on the assumption that the records requested were privileged, presumably pursuant to the psychotherapist-patient privilege established by G. L. c. 233, § 20B. We pause to resolve an issue that has not been raised by the parties: whether the more stringent standard established by *Commonwealth* v. *Fuller, supra*, for sexual assault counsellor records, see G. L. c. 233, § 20J, applies to records privileged pursuant to the psychotherapist-patient privilege. The nature of the statutory privilege established by § 20B, and the issues involved, are not significantly different from those in G. L. c. 233, § 20J. There is no sound reason to differentiate such records from the sexual assault counselling records at issue in the *Fuller* case. Accordingly, the heightened *Fuller* standard of relevance applies when a defendant seeks information protected by G. L. c. 233, § 20B. Cf. *Commonwealth* v. *Tripolone*, 425 Mass. 487, 489 (1997) (heightened *Fuller* standard of relevance applies to records protected by domestic violence counselling privilege in G. L. c. 233, § 20K). "In our view, the decision in *Bishop* . . . plainly indicates that this court intended the *Bishop*

---

[9]These provisions in *Commonwealth* v. *Bishop*, 416 Mass. 169, 182 (1993), were not changed by *Commonwealth* v. *Fuller*, 423 Mass. 216, 226 (1996).

[10]Our resolution of the motion for a new trial also disposes of the defendant's motion for production of records, as such request seeks the mental health treatment records at issue in the motion for a new trial.

standard and protocol to apply when a defendant seeks access to any privileged records, including those protected by § 20J." *Commonwealth* v. *Fuller, supra* at 224. Similarly, the decision in *Fuller* indicates that this court intended the *Fuller* standard to apply when a defendant seeks access to any privileged records.

3. *Access to certain DSS records.* Prior to trial, defense counsel was initially denied discovery on relevancy grounds of certain portions of the DSS records. Those portions were impounded and sealed, marked for identification for potential appellate review, and retained by the Superior Court clerk's office. Later, as a result of the execution of releases,[11] a second Superior Court judge[12] ordered that all DSS records be made available to defense. However, apparently because of a procedure required by the clerk's office, defense counsel was not permitted to view that portion of the DSS records that had previously been impounded and sealed. As a result, defense counsel filed a motion to reconsider review of DSS records on October 4, 1995. A hearing was held on October 16, 1995 (before yet another Superior Court judge) at which the judge was informed of the problem and that "the clerk's office wouldn't allow counsel access to them until the Court attaches an order to the front of them." The judge stated: "So all [Kathy Ann] needs to do . . . is to execute a release so that it's apparent that . . . for the record that she understands that counsel's going to see all the records regardless of any inspection by the Court." The prosecutor pointed out that the present release said exactly that; the defendant did not state anything to the contrary; and the judge twice stated: "Okay." The hearing concluded, and the docket reflects that the motion was "[d]enied after hearing." The judge's denial of the motion was an indication that he considered the matter moot; that the execution of the release had resolved the matter. The defendant now complains that he did not have access to that portion of the DSS records that had been impounded and that he sought at the October 16 hearing. This contention is belied by the further course of proceedings in this case. The trial began ten days after the motion was argued; the matter was never raised in the intervening ten days nor at trial. Where defense counsel had so assiduously sought the records prior to trial, see note 7, *supra*, if his access had continued

---

[11]Kathy Ann signed a release on her own behalf; the mother executed a release on behalf of Kerri.

[12]Neither was the trial judge in this case.

to be denied, it can be presumed he would have raised the matter further. He did not.[13]

4. *Conclusion.* This matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

[13]Further, at oral argument before this court, in response to an inquiry whether appellate counsel had inquired of trial counsel whether trial counsel had in fact obtained access to and reviewed these records, appellate counsel stated that trial counsel could not recall.