## COMMONWEALTH *vs.* TIMOTHY McCUTCHEON.

No. 99-P-860.

Plymouth. October 6, 2000. - May 30, 2001.

Present: GREENBERG, KAPLAN, & DUFFLY, JJ.

*Evidence,* Fresh complaint, Hearsay, Spontaneous utterance. *Rape. Practice, Criminal,* Assistance of counsel. *Constitutional Law,* Assistance of counsel.

At the trial of an indictments for rape of a child under the age of sixteen and for assault with intent to rape a second child under the age of sixteen, the judge did not abuse her discretion in permitting the jury to hear certain testimony either under the rule of *Commonwealth* v. *Cleary,* 172 Mass. 175 (1898), permitting fresh complaint testimony in a statutory rape case, or as spontaneous utterances. [717-721]

The defendant at a criminal trial was not denied effective assistance of counsel where defense counsel's performance was not "measurably below that which might be expected from an ordinary fallible lawyer," *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), when defense counsel's cross-examination of a victim led to the victim's admitting she had underreported the number of times she had had sexual intercourse with the defendant. [721-722]

INDICTMENTS found and returned in the Superior Court Department on November 10, 1995.

The cases were tried before *Judith A. Cowin,* J.

*Frank J. McGee* for the defendant.

*Mary E. Mullaney,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Following an eight-day trial, a jury convicted the defendant on two indictments for rape of one child under the age of sixteen, G. L. c. 265, § 23, and one indictment for assault with intent to rape a second child under the age of sixteen, G. L. c. 265, § 24B.[1] On appeal, the defendant argues

---

[1]The defendant was acquitted on one indictment for rape of the first child by sexual intercourse, G. L. c. 265, § 23. He was sentenced to two years in a

that the judge erred in allowing the jury to hear fresh complaint testimony from three witnesses and that he was denied effective assistance of counsel. For reasons set forth below, we affirm the judgments.

The jury could have found the following facts. The complainants, Helen and Sally,[2] who were close friends, were fourteen years of age in 1994. The events that led to these assignations happened in the summer of 1994. During that time, the defendant allowed the two complainants and other neighborhood children to use his backyard trampoline. The defendant, a thirty-six year old bachelor, cohabited in the house with a woman. Sally was hired to care for the woman's young child. The complainants' conversations with the defendant took on sexual undertones. Helen, in particular, developed a "crush" on the defendant. When he was alone with them in his residence, he supplied them with alcohol, and he allowed them to help themselves to his beer in his absence.

Each one testified to separate sexual encounters with him, with Helen testifying to as many as seven encounters during the summer. The lurid details need not be recited. It is enough to say that the complainants testified to a variety of sexual acts which they described as having been engaged in voluntarily on their part. As things developed, the complainants became obsessively jealous of the defendant. At one point, Sally threw rocks at the house while the defendant was engaging in intercourse with Helen. The complainants called him on the telephone and on one occasion chalked the sidewalk in front of his home with love notes. There were breaks into his home while he was not there, and the complainants placed insulting messages about the defendant's girlfriend beneath his porch.

The upshot was an argument in July, 1994, which, warmed by alcohol, burst into violence. The defendant shoved Helen against a wall when she refused to leave the house. After both girls left, they ran into Carla Freeland, an adult neighbor. She noticed that they were crying. Helen explained what had hap-

---

house of correction on the two rape convictions, those sentences to be served consecutively. On the assault conviction, he was sentenced to ten years' probation.

[2]We use pseudonyms.

pened and blurted out that the defendant did not want to see her anymore. Freeland asked if Helen had become sexually intimate with the defendant. She responded affirmatively. Freeland's efforts to pacify the girls were only fleetingly successful, and she then, with several other neighbors, confronted the defendant, who promised to sever ties with the complainants.

A few months later, Helen's mother contacted the police. Detective Jeffrey Peck interviewed the complainants and the defendant, who denied any wrongdoing. Based on this investigation, charges were brought against the defendant.

The appeal has to do, in part, with testimony given by Helen, Freeland, and Peck, who were called as witnesses for the prosecution. Over the defendant's objection, Helen testified that she had had a conversation with Freeland after the incident mentioned above, in which she (Helen) told Freeland that she "had been having sex with [the defendant]." In response to defense counsel's objection, the judge asked the district attorney whether Freeland was going to be a fresh complaint witness, to which the prosecutor answered, "Yes," and whether she was planning to ask the witness "any more"; to that, the prosecutor replied, "No."[3] Freeland later testified, over objection, to the same conversation. Last, Peck also testified, over the defendant's objection, as a fresh complaint witness. He repeated statements that the complainants had made to him about the sexual encounters.

During a sidebar conference at which certain motions were discussed, prior to the completion of cross-examination of Helen and prior to Freeland's and Peck's testimony, the judge raised the issue of fresh complaint, saying it had "been troubling [her]." Referring to Commonwealth v. LeBeau, 42 Mass. App. Ct. 945, 946 (1997), which involved the admission of fresh

---

[3]A complainant in a sexual assault case may testify to the fact that a fresh complaint was made and to whom it was made but not about the details of the complaint. Commonwealth v. Peters, 429 Mass. 22, 30 (1999). See Liacos, Massachusetts Evidence § 6.19.2, at 357-358 (Brodin & Avery 7th ed. 1999).

The defendant argues that fresh complaint testimony should not have been permitted in this case (see discussion below) and that this testimony by the complainant was improper self-corroboration. Unlike the complainant in Commonwealth v. Peters, 429 Mass. at 30-31, however, Helen did not testify to the details of the complaint.

complaint testimony in a statutory rape case, she said, "It appears to me that . . . ordinarily, the fresh complaint is used to show that there is no consent, that there was an assault, that there was an attack. But here . . . consent is not an issue because the victim can't consent legally. So it seems to me that [by] using fresh complaint here, the government is trying to prove . . . the actual acts of intercourse by fresh complaint, the main fact that's in dispute, because consent is not in dispute." At the conclusion of the sidebar discussion, she made a tentative decision not to admit any of the testimony as fresh complaint. "So it seems to me," she added, "I'm not going to permit the fresh complaint witnesses because there was no complaint. If the government wants to make an argument, I'll hear them or if [the prosecutors] can find any cases to the contrary, I'll be glad to read them. I have not been able to locate any."

The trial judge ultimately did admit the evidence, ruling at the sidebar that even if the statements were not admissible as fresh complaints, they could come in as prior consistent statements.[4] Prior to each witness's testimony, she told the jury that the testimony was being admitted as fresh complaint testimony and instructed them on the elements of fresh complaint; she also instructed them on the use of such testimony in the final instructions.

The defendant contends, however, that such testimony is anomalous because the purpose of fresh complaint is to permit evidence of a victim's "hue and cry" as might be expected of a victim who had been violently raped.[5] In *Commonwealth* v. *Le-Beau*, 42 Mass. App. Ct. 945 (1997), the defendant argued that,

---

[4]Our concerns focus primarily on the use of the Massachusetts rule allowing fresh complaint testimony in a statutory rape case where the complainant has been a consenting partner to the sexual encounters. Because of the result we reach on this point, we need not decide whether the testimony here would be admissible on the alternative ground upon which the judge relied.

[5]Over a century ago, in *Commonwealth* v. *Cleary*, 172 Mass. 175 (1898), Justice Oliver Wendell Holmes criticized the fresh complaint doctrine as a "perverted survival of the ancient requirement that [a woman] should make hue and cry as a preliminary to bringing her appeal" and "an arbitrary rule in the particular case." *Id.* at 176. (*Cleary*, however, applied the rule, in a case involving statutory rape.) Until recently, however, the cases that followed *Cleary* did not seriously call into further question the original rationale for the

although fresh complaint testimony had been admitted in cases of statutory rape from early times, see *Commonwealth* v. *Cleary*, 172 Mass. 175 (1898); *Commonwealth* v. *Ellis*, 319 Mass. 627 (1946), the doctrine was "inapposite" where the complaining witness in a statutory rape case consented to the sexual relationship. We found no need to consider the ramifications of the defendant's argument in that case because in the "particular circumstances" of the case a jury might expect the victim to seek out someone to whom "to tell her story." Those circumstances were "the self-condemnation, fear, and despair and the ambivalence toward the defendant that would impel this fourteen year old high school sophomore toward expression of her troubles to someone." *Commonwealth* v. *LeBeau,* 42 Mass. App. Ct. at 946. We considered only the particular circumstances of that case and did not decide whether in a case involving statutory rape the fresh complaint rule should no longer apply as a general proposition.

We agree with the defendant that the situation here is not quite the same as in *LeBeau.* Helen's complaint to Freeland was not clearly the result of fear or self-condemnation concerning her sexual relationship with the defendant and appeared more to be the result of being rebuffed and rejected. Even so, we do not see a reason to depart from the rule of *Commonwealth* v. *Cleary*, 172 Mass. at 176-177, in this case. The complainants were only fourteen years old, and the defendant was substantially older. Despite their initial "consent," the complainants here were likely — especially because of their lack of understanding of all the ramifications of their acts before they engaged in them — to be affected, in the aftermath of their experiences and rejection, by various emotions, including a sense of betrayal and ambivalence toward the defendant, that would lead them to confide in someone else, as happened in *LeBeau* and also here. In addition, the statute outlawing intercourse with a child under

rule. See *Commonwealth* v. *Lavalley*, 410 Mass. 641, 647 n.7 (1991) (stating that the court was "troubled by a rule which assumes that only those victims who complain of rape were actually raped, while those who remain silent somehow consented to the sexual assault"). As Chief Justice Liacos wrote on behalf of the panel in *Commonwealth* v. *Licata*, 412 Mass. 654, 658 (1992), the fresh complaint rule retains its value because "[w]e cannot ignore the societal tendency to disbelieve sexual assault victims and to presume that a rape victim will make a prompt complaint."

the age of sixteen (G. L. c. 265, § 23) makes the child "incapable, as matter of law, of giving any effective consent." *Commonwealth* v. *Gallant*, 373 Mass. 577, 583 (1977), quoting from *Glover* v. *Callahan*, 299 Mass. 55, 58 (1937). "The law conclusively presumes that those under sixteen years of age are not sufficiently mature to understand fully the physical, mental, and emotional consequences of sexual intercourse, and are therefore incapable of making a rational decision about whether to consent to such conduct." *Commonwealth* v. *Dunne*, 394 Mass. 10, 19 n.17 (1985). Since the law presumes that a person under sixteen is incapable of consenting, the assumption that one who consents to a sexual act would not make a complaint is both inapt and irrelevant.

Even if we were to decide that the rule of *Commonwealth* v. *Cleary, supra,* permitting fresh complaint testimony in statutory rape cases should not be applied here, we would conclude that Helen's anger and frustration, whatever their source, support admission of the statement on a different ground from that given by the trial judge. See *Commonwealth* v. *King*, 389 Mass. 233, 234 (1983); *Barry* v. *Commonwealth*, 390 Mass. 285, 299 n.18 (1983) (appellate court may "affirm a ruling below on a ground not relied upon by the judge"). A precocious sexual relationship with an adult is undoubtedly confusing; it sets an adolescent apart from her peers and can be expected to evoke strong feelings. In our society, we have labeled such activity criminal with respect to the adult participant, even if the minor consented. In point of fact, the prosecutor elicited sufficient foundational testimony regarding Helen's state of mind after the assault and her ejection from the defendant's house to permit not only her testimony as to the statement she made to the neighbor, but also that of the neighbor, Freeland, to be deemed admissible under the rubric of spontaneous utterance, rather than fresh complaint. See *Commonwealth* v. *Fuller*, 399 Mass. 678, 681-682 (1987) (admitting child rape victim's post-attack statements as spontaneous utterances); *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. 106, 110 (1999). Contrast *Commonwealth* v. *O'Connor*, 407 Mass. 663, 670 (1990) (rejecting spontaneous utterance grounds where the record failed to show how much time had elapsed between the exciting event and the

rape complainant's statement). Under that exception to the hearsay rule "a statement is admissible if its utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication . . . ." *Commonwealth* v. *Fuller*, 399 Mass. at 682. "Precise contemporaneousness is not required so long as it appears that the statements were made under the stress of the exciting event," and "in a context where [the declarant] would be expected to be truthful." *Commonwealth* v. *Brown*, 413 Mass. 693, 696 (1992) (listing cases where statements made up to eleven hours after the assault were deemed admissible). See generally Siegel, Timing Isn't Everything: Massachusetts' Expansion of the Excited Utterance Exception in Severe Criminal Cases, 79 B.U. L. Rev. 1241 (1999).

The testimony of Peck pertained to interviews he conducted with both complainants several months after the traumatic influence of the assault and their ejection from the house had subsided. Before Peck's testimony regarding the statements made to him by Helen and Sally, the judge again instructed the jury on the fresh complaint doctrine, stressing that Peck's testimony was admitted only for corroborative purposes and that it was not to be considered for its substantive value. We conclude that the trial judge did not abuse her wide discretion in permitting Peck to repeat the complainants' statements describing their sexual encounters with the defendant in benign terms. The testimony was not prejudicial. The fresh complaint evidence Peck gave contained the same details as those described by the complainants in their own testimony. See *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670-671 (1992) (noting that fresh complaint testimony cannot be used to fill gaps in the prosecution's case).

In the defendant's final claim, he asserts that he was denied effective assistance of counsel. He argues that defense counsel's cross-examination of Helen was flawed because it led to her admitting that she had underreported the number of times she had had sexual intercourse with the defendant. To cover himself, defense counsel informed the judge at a sidebar conference that he was "on the verge of requesting a mistrial." The judge responded, "[Y]ou brought the whole thing out," because the Commonwealth had not introduced any evidence that the

complainant had had sex with the defendant more than three times. Upon reviewing the defense counsel's line of questions on this point, individually and in combination, we are satisfied that counsel's performance was not "measurably below that which might be expected from an ordinary fallible lawyer . . . ." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Oliveira*, 431 Mass. 609, 614 (2000). It appears that defense counsel was apprised before trial of these encounters and made a strategic decision to discredit Helen by introducing the additional sexual acts as prior inconsistent statements in contrast to what she had told the police investigator. See *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. at 112-113, 114. We have no reason to fault this strategy, particularly where the jury did acquit the defendant of one of the three charges that involved Helen.

*Judgments affirmed.*