# DECISIONS

## OF THE

## APPEALS COURT

## OF

## MASSACHUSETTS

COMMONWEALTH vs. SEAN J. DINEEN.

No. 06-P-267.

Hampshire. December 15, 2006. - August 30, 2007.

Present: BERRY, DREBEN, & KAFKER, JJ.

*Rape. Practice, Criminal,* Venue. *Abuse Prevention. Protective Order.*

Venue for the indictment and prosecution of the defendant in Hampshire County for statutory rape was proper, given that G. L. c. 256, § 24A, confers dual venue where the evidence proves an act of conveyance of the victim from a point of origin county to a destination county and the specified crime in the destination county had a relation to, association with, or connective link to the county from which the conveyance originated, and here, the defendant's act of conveying the victim from Hampshire County to his house in Hampden County had a direct connective link to the ensuing rape, given the defendant's prior pattern of transporting the victim between counties in connection with acts of sexual exploitation. [6-9]

At the trial of indictments charging the defendant with violations of an abuse prevention order issued pursuant to G. L. c. 209A, the jury could reasonably have connected the date of a particular holiday with the specific violation of the order set forth in one indictment, and with respect to two other indictments that did not specify dates, the jury could have concluded that the defendant had numerous contacts with the victim after the issuance of the order and manifested a wilful disregard of the order. [9-11]

INDICTMENTS found and returned in the Superior Court Department on December 16, 2003.

The cases were tried before *Bertha D. Josephson*, J.

*Nona E. Walker*, Committee for Public Counsel Services, for the defendant.

*Steven Greenbaum*, Assistant District Attorney, for the Commonwealth.

BERRY, J. This appeal involves a rape indictment returned under G. L. c. 265, § 24A,[1] which places venue for prosecution, and for punishment upon conviction, either in the county where a rape was committed *or* in the point of origin county, if the victim is conveyed from that origin county to another county "in connection with the alleged commission of [the] crime." In effect, the statute sets dual venue for cases where there has been a conveyance of, in other words, a transportation of, the victim across county lines, so that either county may be the venue for prosecution.

In this case, the defendant was indicted by a Hampshire County grand jury and convicted by a Hampshire County petit jury of the offense of statutory rape, that is, the rape of a child under sixteen years of age.[2] More particularly stated, the rape, prosecution, and

---

[1]General Laws c. 265, § 24A, provides in relevant part as follows:

"If, *in connection with the alleged commission of a crime* described in section . . . twenty three . . . of this chapter . . . the person against whom said crime is alleged to have been committed has been conveyed from one county or judicial district into another, said crime may be alleged to have been committed, and may be prosecuted and punished, in the county or judicial district where committed or from which such person was so conveyed."

[2]General laws c. 265, § 23, as appearing in St. 1974, c. 474, § 3, defining the crime of statutory rape and abuse of a child — which, in turn, is incorporated as a subject venue crime in G. L. c. 265, § 24A, quoted in note 1, *supra* — provides as follows:

"Whoever unlawfully has sexual intercourse or unnatural sexual intercourse, and abuses a child under sixteen years of age shall, for the first offense, be punished by imprisonment in the state prison for life or for any term of years, or, except as otherwise provided, for any term in a jail or house of correction, and for the second or subsequent offense by imprisonment in the state prison for life or for any term of years, but not less than five years . . . ."

conviction were predicated on the defendant's sexual intercourse with his biological daughter, who was fifteen years of age.

The question presented is whether, under G. L. c. 265, § 24A, venue for the indictment and prosecution of the defendant properly lay in Hampshire County, wherein there were precedent events that were followed by the defendant's conveyance of the victim from the origin Hampshire County to the destination Hampden County (specifically the city of Springfield), wherein the final substantive act of statutory rape was perpetrated. This question of the applicability of dual venue under G. L. c. 265, § 24A, in turn, involves analysis of the statutory terms requiring that the "convey[ance]" of the victim from one county to another be "in connection with" the commission of the crime, in this case, statutory rape.[3]

The setting of venue for criminal prosecutions is, in the main, a matter of legislative discretion, so long as the legislative venue design is not in conflict with art. 13 of the Massachusetts Declaration of Rights. See *Opinion of the Justices*, 372 Mass. 883, 897 (1977). See also part 3, *infra*. The legislative prerogative to confer dual venue for prosecutions in cases where there is a cross-county conveyance "in connection with the commission of the alleged crime," G. L. c. 265, § 24A, is "consistent with the public interest" and in "the interests of justice." *Ibid.*

Given its legislative purposes, we do not read G. L. c. 265, § 24A, as bound by the narrow circumference the defendant would draw about it, i.e., that the law would require the Commonwealth to prove that a defendant's conveyance of a victim from county to county is undertaken with an intent or plan, pre-existing at the time of crossing from the origin county, to commit the rape in the destination county where the conveyance ends. "[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in con-

---

[3]Venue is subject to waiver. *Opinion of the Justices*, 372 Mass. 883, 896-897 (1977). *Commonwealth* v. *Robinson*, 48 Mass. App. Ct. 329, 336 (1999). In this case, however, the defendant acted to preserve his challenge to venue in Hampshire County both at the time the indictment was returned and during trial. Following return of the indictment, the defendant filed a motion to dismiss based on lack of venue. During trial, the defendant challenged venue in a motion for a required finding of not guilty.

nection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Commonwealth* v. *Hinds*, 437 Mass. 54, 63 (2002), cert. denied, 537 U.S. 1205 (2003), quoting from *Commonwealth* v. *Smith*, 431 Mass. 417, 421 (2000). We read G. L. c. 265, § 24A, as having a quite clearly defined legislative intent to confer dual venue in both counties where the evidence proves an act of conveyance of the victim by the defendant from a point of origin county to a destination county, and the § 24A specified crime, here rape of a child, in the destination county has a relation to, association with, or connective link to the county from which the conveyance originated. See part 3, *infra.*

In this case, as we further address in greater factual detail in parts 1 and 2, *infra*, given that the defendant picked up the victim at her house in Hampshire County on the day of the rape and engaged in the deliberate act of conveying her away from Hampshire County to his house in Hampden County, and given a prior pattern of serial sexualized contact, as the defendant repeatedly transported the victim back and forth between Hampshire and Hampden Counties in connection with acts of sexual exploitation, there was a direct connective link between the conveyance and the ensuing rape. The prosecution of the statutory rape charge in Hampshire County, therefore, firmly fit within the definitional framework of G. L. c. 265, § 24A. Accordingly, venue for prosecution properly lay in either Hampshire or Hampden County, and the defendant's challenge to his rape conviction on the ground of lack of venue fails.[4]

1. *Factual background.* We summarize the trial evidence. On February, 7, 2002, the victim, who was then fifteen years old, and the defendant, her biological father, were reunited (the defendant and the victim's mother had parted ways when the victim was a few months old, and he had seen the victim only once since then, when she was four). After this meeting, the victim and the defendant began seeing each other. Over the next few months, the frequency of times when the defendant was

---

[4]The defendant was also indicted and convicted on nine counts of violation of an abuse prevention order issued under G. L. c. 209A. The defendant argues that there was insufficient evidence to support certain of the c. 209A convictions for violation of the abuse prevention order, a point we address in part 4, *infra.*

with the victim increased to as many as four or five times per week. The defendant and the victim went out to eat and to the movies, and the defendant took the victim to construction sites where he was working. The defendant, who lived in Springfield (in Hampden County) would pick up the victim from her home. At the time of the statutory rape, the victim was living in Northampton (in Hampshire County).

Over time, the encounters between the defendant and the victim not only became sexually charged, but escalated to greater levels of sexuality. On one occasion, early on in the chronology of sexual encounters, the defendant and the victim were at her house, while her mother was at work. The two were lying in bed, and the defendant massaged the victim's head, as he had done on other occasions, the victim said, to help her relax. However, during this encounter, the defendant also began touching the victim's neck and breasts. The next day, the defendant asked if what he had done was okay. The victim responded that it was, and that she loved him. A similar incident of fondling of the victim's breasts occurred at the defendant's house — again, reflecting the defendant's pattern and the deliberate nature of his acts in moving the victim back and forth between her house and his house, spanning both counties as venues for his sexual exploitation.

2. *The conveyance and the rape.* It is against this preexisting pattern of sexualized meetings and touchings that we turn to the day of the rape. Sometime shortly after March, 2002, in the late afternoon, the defendant picked the victim up at her Northampton home. The two stayed together throughout the day and evening and, then, between 3:00 A.M. and 4:00 A.M., the defendant drove the victim to his house in Springfield. The defendant's act of picking up the victim in Hampshire County and driving her to the his home in Hampden County followed a course of conduct in which the defendant had, on several other occasions, navigated the victim between the two counties and engaged in sexual encounters with her in both counties.

On the particular night the rape occurred, following the conveyance of the victim from Hampshire to Hampden County and the arrival at the defendant's house, the defendant had sexual intercourse with the victim on a couch in his living room. After

this act of statutory rape of a child (see note 2, *supra*), the defendant went upstairs to his bedroom, where his wife was sleeping. The victim went to sleep on the couch.

The victim did not immediately disclose that she had sex with the defendant. It was not until a few months later, in July or August, 2003, when the victim was being counselled at a program for troubled adolescent girls, that she disclosed the prior sexual acts with the defendant.[5]

3. *Venue under G. L. c. 265, § 24A.* Article 13 of the Massachusetts Declaration of Rights states that "[i]n criminal prosecutions, the verification of facts in the vicinity where they happen, is one of the greatest securities of the life, liberty, and property of the citizen." This soaring language, however, becomes more earthbound when venue is at issue. As early as 1824, the Supreme Judicial Court

> "declared that article 13 'is not prohibitory of a trial of an offence, in any other county than that in which it happened; nor is it affirmative of a right in the citizen to be tried in any particular county. It is merely declaratory of the sense of the people, that the proof of facts in criminal prosecutions should be in the vicinity or neighbourhood where they happen.' *Commonwealth* v. *Parker*, 2 Pick. 550, 553 (1824). Selection of the general term 'vicinity' rather than the more precise, technical term 'county' by the drafters of art. 13, men learned in the law, manifests an intention that a narrow, technical interpretation of the word is to be avoided. *Id.* Although art. 13 imposes some limitation on the places where a criminal defendant may be tried, it allows the Legislature discretion, consistent with the public interest and the interests of justice, to establish venue requirements

---

[5]When the victim finally disclosed the act of intercourse, the victim emphasized that she had not wanted to get her father in trouble and stated that their sex had been consensual. That the intercourse was not by force, and that the victim consented to the advance by the defendant, is not, however, a defense to statutory rape of a child under G. L. c. 265, § 23. See *Commonwealth* v. *Dunne*, 394 Mass. 10, 19 n.17 (1985) ("The law conclusively presumes that those under sixteen years of age are not sufficiently mature to understand fully the physical, mental, and emotional consequences of sexual intercourse, and are therefore incapable of making a rational decision about whether to consent to such conduct"); *Commonwealth* v. *McCutcheon*, 51 Mass. App. Ct. 715, 720 (2001).

for criminal trials. This flexibility was recognized and utilized prior to the adoption of art. 13, both in England and in Massachusetts and is a part of our common law. *Crocker* v. *Superior Court*, 208 Mass. 162, 165-174 (1911). *Commonwealth* v. *Parker, supra* at 554-555."

*Opinion of the Justices*, 372 Mass. at 896-897 (footnotes omitted).[6] General Laws c. 265, § 24A, is a quintessential statutory enactment which reflects the legislative discretion recognized in *Opinion of the Justices, supra*, to provide wide latitude for certain sex-related crimes by setting venue in dual counties for criminal prosecutions, "consistent with the public interest and the interests of justice." *Id.* at 897. Cf. *Commonwealth* v. *Libby*, 358 Mass. 617, 620 n.2 (1971) ("With respect to the offences of kidnapping and rape, there is wide latitude in trying a defendant in either the county from which or the county to which the victim was taken," citing G. L. c. 265, §§ 24A, 27).

The core of the defendant's argument contesting the dual venue of § 24A is that there was insufficient evidence that his transportation or conveyance of the victim from Hampshire County to Hampden County was "in connection with" the commission of the rape under § 24A because the law should be read "to require the Commonwealth to prove that, at the time of the conveyance, the defendant intended to commit one of the listed crimes [in G. L. c. 265, § 24A,] or put another way, that the conveyance was done with the intent to facilitate the commission of the crime." The defendant contends that the trial evidence in this case did not establish that he had such a pre-existing intent and a plan to have intercourse with the victim when he drove her from Hampshire County to his house in Springfield in Hampden County.

We do not read the plain language of G. L. c. 265, § 24A, as containing such a specific intent element, and we decline to engraft one upon it. A law is to "be interpreted in accordance with

---

[6]Other legislative enactments also confer dual venue similar to that provided for in G. L. c. 265, § 24A. See, e.g., G. L. c. 265, § 27 (venue for prosecution of kidnapping in county of abduction or in county to which victim transported); G. L. c. 277, § 57 (prosecution allowed in both counties when criminal acts committed close to county boundary line); G. L. c. 277, § 60 (prosecution for homicide permitted in both counties if criminal act transpires in one county and death occurs in another).

the usual and natural meaning of the words." *Anderson Street Assocs.* v. *Boston*, 442 Mass. 812, 816 (2004), quoting from *Gurley* v. *Commonwealth*, 363 Mass. 595, 598 (1973). There is nothing in the language of G. L. c. 265, § 24A, that suggests intent is an element.

Rather, as stated in the beginning of this opinion, we interpret G. L. c. 265, § 24A, as conferring dual venue in circumstances, such as presented here, where (a) there is an act of conveyance of a victim by a defendant from a county of origin to a destination county, and (b) the conveyance is shown to be in connection with one of the specially designated crimes in G. L. c. 265, § 24A, in that the conveyance has a relation to, association with, or connective link to, the ensuing crime[7] committed in the destination county — here, the rape of a child. In determining, under G. L. c. 265, § 24A, whether a conveyance has a relation and connective link to the crime, the totality of the circumstances is to be weighed.

In this case, the evidence established both an act of conveyance as well as a relation and connective link between the conveyance and the rape offense. That the conveyance was a deliberate manner and means to bring the victim to the second county where an act of sexual exploitation, the rape, would be perpetrated was evident not only from events that transpired between the defendant and the victim in the origin Hampshire County on the day of the rape, but also from the pattern of serial sexualized contact between the defendant and the victim, as the defendant repeatedly transported the victim back and forth between Hampshire and Hampden Counties in connection with acts of sexual exploitation. Indeed, bringing the victim from Hampshire County to the relative privacy of his own home in Hampden County may be deemed to have emboldened the defendant to

---

[7]In the criminal sphere of our State law, research reveals a dearth of cases construing the phrase "in connection with." In looking at civil law, one finds that the phrase has been construed in respect to contract terms in the following manner. " 'Arising out of' is ordinarily held to mean 'originating from, growing out of, flowing from, incident to or having connection with' (internal quotation marks omitted). *Murdock* v. *Dinsmoor*, 892 F.2d 7, 8 (1st Cir. 1989). 'In connection with' is ordinarily held to have even a broader meaning than 'arising out of' and is defined as related to, linked to, or associated with." *Metropolitan Property & Cas. Ins. Co.* v. *Fitchburg Mut. Ins. Co.*, 58 Mass. App. Ct. 818, 821 (2003).

finalize by intercourse his deepening sexual relationship with the victim.

Given the foregoing, we determine that venue in Hampshire County was proper under G. L. c. 265, § 24A.[8]

4. *The violations of the G. L. c. 209A protective order.* The defendant, convicted of nine counts of violation of an abuse prevention order issued under G. L. c. 209A, challenges three of these convictions arising out of contacts with the victim occurring during June, 2002. Specifically, the defendant challenges the G. L. c. 209A, § 7, convictions in the counts charging contact with the victim on or about June 16, 2002 (count III), and between June 14 and June 30, 2002 (counts IV and V). He argues that the evidence, considered in the light most favorable to him, does not prove that he had contact with the victim on more than one occasion during the time periods alleged in the three indictments. Because motions for a required finding of not guilty were not filed, our review is limited to whether there is a substantial risk of a miscarriage of justice should the convictions stand. We discern no such risk with respect to the three convictions.

We first set forth the factual and procedural background leading to issuance of the c. 209A abuse protective order. The order was sought by the victim's mother following a sexually charged event that occurred on June 12, 2002. The defendant picked up the victim at her house in Northampton, and the two spent the day together. On this particular night, the two returned to the victim's house in Northampton. The victim's mother was at

[8]We address two other issues the defendant raises in challenge to the indictment. First, the defendant argues that the Hampshire County grand jury had no jurisdiction because the rape occurred in Hampden County. This is merely a refashioning of the venue argument. "Venue in its modern and municipal sense relates to and defines the particular county or territorial area within the State or district in which the cause or prosecution must be brought or tried. It commonly has to do with geographical subdivisions, relates to practice or procedure, may be waived, and does not refer to jurisdiction at all." *Paige* v. *Sinclair*, 237 Mass. 482, 484 (1921). Second, the defendant challenges the technical form of the indictment handed down by the Hampshire County grand jury. This form of challenge is unavailing. There is no requirement in G. L. c. 265, § 24A, that the indictment state that the basis for venue in Hampshire County was the conveyance of the victim from Hampshire County to Hampden County, where the rape occurred.

home. The mother and daughter had an argument. (The mother and the victim had longstanding difficulties in their relationship; the mother testified, however, that the relationship with her daughter became "tumultuous" after the defendant entered the picture.)

Despite the argument between mother and daughter, the defendant did not leave the house. Instead, the defendant joined the victim who had gone to her bedroom. While lying with her on the bed, the defendant began touching the victim's breasts. He then removed his pants and the victim's pants. At that point, the mother entered the bedroom, and seeing the two in bed, to use the victim's trial description, "freaked out." The mother called 911. However, before the police arrived, the defendant and the victim dressed. When the police arrived, both the defendant and the victim denied the mother's description of what she had seen in the bedroom.[9] The denial by the victim followed advice by the defendant, as the victim related at trial, that, given the strained relationship between mother and daughter and the defendant's conflict with the mother, it was the two of them "against one; no one is going to believe your mother."[10]

We turn to the defendant's appellate challenge to the three G. L. c. 209A convictions. We begin with count III, which is the only one of the three to state a particular day, June 16, 2002, as the date of violation. We are convinced that, on the state of the evidence, the jury could reasonably have decided that this count was proved by the act of the defendant taking the victim to his

[9]The summary of the June 12 event is taken from the trial evidence, including the testimony of the mother and victim. At the time of the police arrival at the house on that day and during the resulting investigation, the victim denied that this sex event with the defendant took place. As previously noted, it was not until she was in adolescent counselling that the victim revealed what had transpired between her and the defendant. See note 5, *supra*, and accompanying text.

[10]Notwithstanding the defendant's prediction, the next day, June 13, 2002, the mother sought and was granted an abuse prevention order under G. L. c. 209A, prohibiting the defendant from having contact with the victim. The order issued at 2:45 P.M. on June 13, 2002. On the night of June 14, 2002, during an interview with the police, the defendant was served with the c. 209A order. Notwithstanding receipt of the order, the defendant continued to have contact with the victim. The continuing postorder contacts with the victim that occurred from June, 2002, through April or May, 2003, were the predicates for the defendant's nine convictions of violations of G. L. c. 209A.

parents' home on the night before Father's Day. That Father's Day falls in mid June is a matter of common knowledge. The jury could reasonably connect the dating of this holiday with the particular violation of the G. L. c. 209A order set forth in count III.

Counts IV and V spanned prohibited contacts from June 14 to 30, 2002. Again, we are firmly convinced that there was sufficient evidence to support the convictions on these counts, such that there was no substantial risk of a miscarriage of justice. First, the defendant testified at trial that in the month of June, 2002, after he had been served with the restraining order, he continued to have contact with the victim. Second, the victim testified that she saw the defendant "numerous" times during the month of June. Third, there was evidence that the defendant at the very time the order was issued, that is, as of June 13, 2002, manifested wilful disregard of the G. L. c. 209A abuse prevention order. To illustrate, the evidence was that on June 13, the day after the police were called to the mother's house, the defendant, knowing that a c. 209A order had issued, picked up the victim at her house. The two discussed the restraining order. The defendant told the victim that the order "wouldn't be in effect until it's actually served into his hands," that someone already had tried to serve him at his home, but "he never answered the door."

Taking the evidence in the light most favorable to the Commonwealth, a rational jury could have concluded that the defendant violated the G. L. c. 209 abuse protection order on the three occasions in June, 2002, as charged in counts III, IV and V. No showing has been made that, if the three verdicts are left undisturbed, a substantial risk of a miscarriage of justice will result.

*Judgments affirmed.*