COMMONWEALTH vs. JOSE MARTINS
(and three companion cases[1]).

No. 94-P-564.

Suffolk. March 16, 1995. - June 19, 1995.

Present: PERRETTA, PORADA, & IRELAND, JJ.

*Practice, Criminal*, Sentence, Jury and jurors, Instructions to jury, Deliberation of jury. *Evidence*, Fresh complaint. *Jury and Jurors.*

Imposition of consecutive sentences on convictions for aggravated rape and kidnapping was error where it could not be determined whether the aggravated rape conviction was based on joint venture or on kidnapping. [637-638]

At the trial of rape indictments there was no error in the judge's admission in evidence of fresh complaint testimony that was not identical to the victim's testimony, where the fresh complaint details were corroborative and those portions at variance did not fill gaps or materially strengthen the prosecution's case. [638-639]

At a criminal trial, during jury deliberation, the judge properly declined to hold a further hearing relative to the competency of a juror after receiving a negative response to his inquiry of the juror whether he suffered memory lapses that would interfere with the performance of his duty, and the judge properly declined to discharge the juror where his inability to serve was not established as a "demonstrable reality" on the record. [639-640]

In the circumstances of a criminal trial, there was no error in the judge's twice giving a *Rodriquez* charge (*Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 [1973]), first at the end of the second day's deliberations and again at the beginning of the third day, after which the jury deliberated for a further five hours, returning once with a question [640-641]; nor did the judge's error in telling the jury after the second *Rodriquez* charge that the case was "going to be decided by some jury here in Suffolk county" constitute, in the circumstances, reversible error [641].

---

[1]One of the companion cases is against Martins, and two are against Arthur Barboza.

INDICTMENTS found and returned in the Superior Court Department on December 6, 1991.

The cases were tried before *Thomas E. Connolly*, J.

*Rosemary J. Cooper* for Jose Martins.

*Jane Larmon White*, Committee for Public Counsel Services, for Arthur Barboza.

*Jane A. Sullivan*, Assistant District Attorney, for the Commonwealth.

PORADA, J. Each of the defendants was tried and convicted of aggravated rape and kidnapping by a jury in the Superior Court. The defendants have appealed, claiming error in the imposition of consecutive sentences for the crimes of aggravated rape and kidnapping, in the admission of fresh complaint testimony that allegedly exceeded the scope of the victim's testimony, in the judge's refusal to dismiss a juror for alleged memory lapses, and in the judge's giving an unassented to second *Rodriquez* charge (*Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 [1973]) which contained coercive language. We affirm the convictions of aggravated rape and kidnapping but vacate the kidnapping sentences and remand to the Superior Court for resentencing on those charges.

We address each of the claimed errors.

1. *Consecutive sentences.* The jury were instructed that the defendants could be convicted of aggravated rape if the rape was committed during a joint venture or during a kidnapping. The jury returned general verdicts of guilty of aggravated rape, as well as kidnapping, for both defendants. The judge imposed consecutive sentences on the defendants for those crimes. The defendants argue that there is no way to determine whether the aggravated rape convictions were based on joint venture or on kidnapping and, consequently, the judge has punished them twice for the same crime. There is no question, as the Commonwealth concedes, that the imposition of consecutive sentences was error in this case. It is a well established principle that where, on the evidence and the judge's charge in a particular case, one crime could have been proved completely by evidence forming part of the nec-

essary proof of the other crime, imposition of consecutive sentences is improper. *Commonwealth* v. *Wilson*, 381 Mass. 90, 125 (1980). *Commonwealth* v. *Williams*, 23 Mass. App. Ct. 716, 718-719 (1987).

2. *Fresh complaint testimony.* The defendants assert that parts of the fresh complaint testimony of the police officer who interviewed the victim after the incident went beyond the scope of the victim's direct testimony and, therefore, were improperly admitted. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 351 (1994). While the defendants are correct that a fresh complaint witness cannot testify to events not recounted by the victim in a general manner, it is not necessary that fresh complaint testimony be sanitized to match exactly the victim's testimony. *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992).

Here, the victim testified that when two girls started to beat her, the defendants were part of the group following closely behind the girls and that when another boy tried to help the victim run away from the girls, the entire group, including the defendants, ran after them and kept the victim from escaping. The defendant Barboza, the victim further testified, told the "rescuer" to leave and to let the girls fight. Thereafter, according to the victim's testimony, the entire group went to the park, with the two girls restraining the victim by her arms. At the park, the victim said, she was forced to perform humiliating acts, including the performance of oral sex on the defendant Barboza, who flashed a knife at the victim. The victim also testified that at the park the defendant Martins took her aside and told her he would help her escape but only if she had sex with him. From the park, the victim asserted, she was taken back to an abandoned apartment by the group, including the two defendants, where she was forced to perform oral sex on the defendant Martins. In light of the victim's testimony, we conclude that the challenged testimony of the police officer — that the victim said the boys "enjoyed" the attack, that they stood around cheering the girls when they beat the victim, that they prevented the victim from escaping at the beginning of

the incident, and that the whole group took the victim to the park — was not erroneously admitted. Those details were largely corroborative of the victim's testimony and those portions that were at variance did not fill gaps in or materially strengthen the prosecution's case. See *Commonwealth* v. *Scanlon*, 412 Mass. at 670-672; *Commonwealth* v. *Coleman*, 30 Mass. App. Ct. 229, 236 (1991).

3. *Juror competency.* On the second day of the jury deliberations, a juror sent a note to the judge expressing concern about the jury foreman. After consulting with counsel, the judge decided to question the juror, who stated that "[w]hen the foreman of the jury introduced himself he . . . said I have — quote — 'lapses of memory' — unquote." The juror went on to say that the foreman was having difficulty remembering the jury instructions and that she believed he had a faulty memory. The judge then called the foreman and asked him if he had any problems with memory lapses that would interfere with his performance of his duties. The foreman replied no and was then sent back to the jury to continue to deliberate. Neither the prosecutor nor defendants' counsel objected to the procedure followed by the judge. Thereafter, after further reflection, defense counsel for Barboza asked that this juror be discharged, and the judge refused to do so. Defense counsel argues that the judge erred in refusing to hold a further hearing relative to the competency of the juror and in refusing to discharge him in light of the repeated requests from the jury for further instructions on joint venture, kidnapping, and aggravated rape. We conclude the judge did not abuse his discretion in declining to do so.

General Laws c. 234, § 26B, as appearing in St. 1967, c. 285, provides in pertinent part: "If, at any time after the final submission of the case by the court to the jury and before the jury has agreed on a verdict, a juror dies, or becomes ill, or is unable to perform his duty for any other good cause shown to the court, the court may order him to be discharged . . . ." In this case, once the foreman advised the judge that he did not have memory lapses which interfered

with his duties, the judge was right not to question him further. *Commonwealth* v. *Connor*, 392 Mass. 838, 845 (1984).

The judge was also correct in refusing thereafter to discharge the juror when requested by Barboza's counsel because the foreman's inability to serve had not been established "as a demonstrable reality" on the record. *Id.* at 846-847. The jury's request for reinstructions did not establish the foreman's incompetency. The first request for jury instructions came two hours after jury deliberations had begun on Friday afternoon. At that time, the judge reinstructed the jury on the issues of joint venture, aggravated rape, and kidnapping. His supplementary instructions ran for ten pages of transcript. Later in the day, the jury asked for a definition of "detain" in the kidnapping instruction. The next clarification requested by the jury was on Tuesday, when the jury again asked for a definition of kidnapping. Given that there was a lapse of three days between the judge's first reinstruction and the judge's third and final reinstructions to the jury, that the reinstructions were lengthy, and that the issues of joint venture and kidnapping were not without some complexity, we do not see how they are any indication of the foreman's inability to perform his duties. The jury's request for reinstructions can just as easily be interpreted as reflecting the jury's desire to act responsibly rather than indicating memory lapses on the part of the foreman.

4. *Rodriquez charge.* On the second day of deliberations at about 3:00 P.M., the jury advised the judge that they could not reach a verdict. At that time, the judge read the jury the charge suggested for these occasions in *Commonwealth* v. *Rodriquez*, 364 Mass. at 101-102. The following morning, before the jury resumed their deliberations, the judge gave the *Rodriquez* charge again. He said that he was doing so because, in viewing the jury the day before, he had noticed that they had looked tired and drained at the time he delivered the initial charge. In reciting the charge anew, the judge added the following words: "This case is going to be decided, folks. I'm telling you. It's going to be decided by some jury here in Suffolk county." The defendants have two complaints

about the second *Rodriquez* charge. First, they contend it was error to give it twice and next, they argue that the second charge was unduly coercive because of the judge's added comments.

We decide that it was not error for the judge to give the *Rodriquez* charge twice in the circumstances of this case. Whether to give the *Rodriquez* charge is a matter of discretion for the trial judge. *Commonwealth* v. *Haley*, 413 Mass. 770, 779 (1992). Here, where the trial judge noted that the jurors looked tired and drained when he initially gave the charge, there was no abuse of discretion in his reciting the charge anew. Compare *Commonwealth* v. *Connors*, 13 Mass. App. Ct. 1005, 1006 (1982). Nor could it be said that the giving of the instruction a second time in this case had a coercive effect where the jury deliberated another five hours after the charge before delivery of a verdict. *Ibid.*

The judge's added words in the second charge given to the jury are precisely those words which the Supreme Judicial Court in *Commonwealth* v. *Rodriquez*, 364 Mass. at 98-99, found have a tendency toward coercion. Consequently, the judge was wrong to tell the jury that some jury in Suffolk County would eventually resolve the case. However, there is nothing in the *Rodriquez* case to suggest that the use of those words creates reversible error. Here, the jury deliberated for five hours after the purportedly coercive charge. During that time they returned with a question for the court. Both of these facts belie the defendants' claim that the jury were coerced into rendering a verdict by the judge's addition of these words per se to his charge. There was no reversible error in the circumstances of this case.

The judgments on the convictions of kidnapping are vacated, and those indictments are remanded to the Superior Court for the imposition of sentences to run concurrently with the sentences imposed on the convictions of aggravated rape. The remaining judgments are affirmed.

*So ordered.*