COMMONWEALTH *vs.* JHONNY GOMEZ.[1]

No. 00-P-703.

Suffolk. November 5, 2001. - June 20, 2002.

Present: LENK, GILLERMAN, & COHEN, JJ.

*Jury and Jurors. Practice, Criminal,* Deliberation of jury, Question by jury, Hearsay. *Evidence,* Hearsay, Joint venturer.

The jury in a criminal action were not coerced into rendering a verdict by the judge's suggestion that the jury isolate and list the factual issues on which they were divided and give the attorneys in the case an opportunity to argue to the jury on those issues, where the judge's words were only an invitation, where the judge made clear that the proposed procedure was entirely optional, and where the jury evidently felt free to reject it and to continue their deliberations; moreover, it was not coercive for the jury's question to go unanswered for close to three hours, where the judge had informed the jury that he was beginning another trial, that he might not be available to respond to their inquiries immediately, and that they should keep working while they waited for him. [252-254] LENK, J., concurred.
At the trial of an indictment charging the defendant with trafficking in cocaine, there was enough nonhearsay evidence to establish an adequate probability that the defendant and another person were working together to traffic in cocaine, and thus, there was no error in admitting the out-of-court statement of that other person. [254]

INDICTMENT found and returned in the Superior Court Department on January 22, 1998.

The case was tried before *Patrick F. Brady,* J.

*Christopher R. Goddu* for the defendant.

*Cathryn A. Neaves,* Special Assistant District Attorney, for the Commonwealth.

COHEN, J. The primary issue presented by this appeal is whether an unusual suggestion made by the trial judge in an ef-

---

[1]As is our custom, the name of the defendant is as it appears on the indictment; elsewhere in the record, the defendant's first name is spelled "Johnny." See *Commonwealth* v. *Esteves,* 46 Mass. App. Ct. 339, 339 n.1 (1999).

fort to encourage agreement by a possibly deadlocked jury was coercive to the point of calling for reversal of the defendant's conviction. Although we do not endorse the approach taken by the judge, we conclude that there was no undue coercion. We also reject the defendant's remaining argument, that there was insufficient evidence of a joint venture to permit the admission of hearsay statements by the defendant's alleged confederate. We therefore affirm the judgment of conviction.

*Background.* The defendant was the subject of two indictments brought under G. L. c. 94C, § 31, one for trafficking in cocaine in an amount above fourteen grams, and the other for conspiracy to violate the narcotics laws. The charges stemmed from an incident on October 9, 1997, on Washington Avenue in Chelsea, in which an undercover State trooper purchased 28 grams of cocaine from an individual named Kenneth Daley. As can be gleaned from the prosecution's case, earlier that day, the trooper had approached Daley and informed him that he would like to buy an ounce of cocaine. Daley said that he needed to contact his supplier and used the trooper's cell phone to place a call. The trooper heard the beeping noise of a pager and, at Daley's request, punched in the cell phone number. The trooper soon received a call back and heard a male, accented voice on the other end of the line. Daley took the phone, had a brief conversation with the caller, and then told the trooper where they would be meeting "his guy."

Daley and the trooper went to the designated location, and the trooper gave Daley the agreed-upon sum of money. Eventually, following a second call to the beeper number and another response from what sounded like the same individual, a blue Oldsmobile automobile pulled up. Daley got into the passenger side of the vehicle and remained in the car while the driver slowly moved the car for a short distance. When the car stopped, Daley emerged and walked back to the trooper. He then handed the trooper a plastic bag, which later was found to contain cocaine.

It was stipulated by the defense and prosecution that the driver of the vehicle was the defendant. Because this transaction was part of an ongoing investigation, the defendant was not immediately arrested or searched for marked bills. The defense at-

tempted to capitalize on this fact, contending that there was no hard proof that the defendant had supplied the drugs to Daley or taken any money from him while they were in the car together; i.e., that Daley was the lone seller, and that Daley's actions were merely a diversionary tactic.

The defendant's jury trial on the trafficking charge began in Superior Court on Thursday, March 18, 1999.[2] It was a short proceeding, consisting of the testimony of only three witnesses: the trooper who purchased the drugs and two other plain clothes officers who observed the purchase from an unmarked car. At 1:00 P.M. on Friday, March 19, the case was submitted to the jury. The jury deliberated for about three hours and then were excused for the weekend.[3] Deliberations resumed at 9:45 A.M. on Monday, March 22.

At 2:40 P.M. on Monday, after a total of about eight hours of deliberations, the jury sent out a note stating: "The jury has not been able to arrive at a unanimous decision. Please advise as to what we should do next." Defense counsel immediately moved for a mistrial, but, when the motion was denied, agreed that it was appropriate for the judge to give the *Tuey-Rodriquez* charge. See *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851); *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973). At 3:25 P.M., the judge delivered one of the approved formulations of the *Tuey-Rodriquez* charge and the jury continued to deliberate until 4:25 P.M., when they were excused for the night.

Early the following morning, before the jury were brought in to the courtroom or resumed deliberations, the judge conferred with counsel. He proposed using a technique that he thought was sometimes employed to help resolve jury deadlock, that is, to ask the jury to isolate and list the factual issues on which they were divided and give the attorneys the opportunity to argue to the jury on those issues. Both counsel immediately expressed serious reservations, the prosecutor's reaction being particularly vociferous. The prosecutor argued that the proposed procedure would intrude upon the function and province of a

---

[2]Three months after the trafficking conviction, the conspiracy charge was filed with the defendant's assent.

[3]The only communication from the jury on Friday afternoon was a request at 3:30 P.M. for the tape recording of the charge.

deliberating jury and would impermissibly attempt to find out where the jurors stood. She felt so strongly that the approach was misguided that she told the judge that if he remained inclined to use this technique, she would seek emergency appellate relief under G. L. c. 211, § 3.[4] The judge refused to delay the case for this purpose and left the bench for a short recess so that defense counsel could confer with the defendant about the judge's suggestion.

When the judge returned to the bench, the prosecutor was not in the courtroom. Defense counsel formally objected to the judge's proposal, and the jury were brought in. The judge greeted the jury and then voiced his suggestion, which is set out in full in the margin.[5] At 9:40 A.M., the jury were sent back to deliberate.

---

[4]Since the case was being tried in the Suffolk County court house, there was particularly ready access to the Supreme Judicial Court.

[5]"I'm going to release you to resume your deliberations in a moment, but I would just have a suggestion at this point for you.

"Sometimes in the course of the deliberations, there may be a certain factual issue or factual issues on [*sic*] which the jury may consider quite significant in the case and upon which they're having some reasonable debate and perhaps difference of opinion. Sometimes it can help if the attorneys were given the opportunity to perhaps re-address or speak again to certain factual issues in the case that may be uppermost or foremost in the jury's thinking. The procedure is simply that the jury is asked to try to put in a concrete form as precisely and as concrete as possible what factual issue or issues they would like the attorneys to address on further final argument. I would then share that communication from the jury with counsel, give them an adequate opportunity of course to get their thoughts in order and then perhaps give each side perhaps ten minutes, an appropriate time to simply speak to on further final argument the issues that the jury has submitted.

"Now, I want to make it very clear that I do not want to invade the privacy of the jury deliberations, and by no means am I ordering you or urging you for that matter or putting any pressure on you whatsoever to send me such a communication attempting to specify the factual issues on which the jury may be having some significant debate. That would be completely up to the jury. The judge has no right to compel the jury to explain the status of their deliberations and that's not at all my intent.

"What my intent is is to see if there's some way that the jury might be helped by further argument of counsel. Of course, this is not re-opening the case. The evidence is closed and we're in the middle of deliberations and it would not be within my power to re-open the evidence and let you hear further witnesses, but I see no problem in letting the attorneys have an opportunity if they wish, to address such factual issues as the jury might like them to do. I would point out also that any communications or requests for

Meanwhile, the prosecutor was presenting to a single justice of the Supreme Judicial Court a handwritten petition for emergency relief, which was signed by both parties. The petition requested, on behalf of both the defendant and the Commonwealth, that the single justice enjoin the trial judge "from interferring [*sic*] with the deliberations of a deliberating jury." In response, the single justice issued the following order: "In the absence of joint agreement by counsel and the defendant (which it appears will not occur), the judge is not to proceed in the manner outlined by him to counsel (namely, to have the deliberating jury list 'issues' that may be of concern to them and then have counsel reargue in response to the issues). The jury's deliberations are to proceed in the usual manner, subject to such appropriate questions that they may ask and the usual instructions concerning deadlock, if such instructions are timely and otherwise proper."

Later that day, shortly before 2:20 P.M., the trial judge conferred with counsel about a new note from the jury. The note, which had been sent out at 11:34 A.M., read: "If there are one or more jurors who do not place significant value on testimony offered by police officers, what do we do?" The judge explained to counsel that he had been unable to bring this development to their attention earlier, because he had been in the midst of final arguments and the charge in another case.

By this time, the judge and counsel had received the decision of the single justice. The judge observed that the jury's question did not appear to be calling for reargument and therefore did not inform them that the option of reargument was now off the table. With counsel's assent, he simply answered the inquiry by communicating in writing that questions of witness credibility were solely up to the jury. The jury were given the judge's

further argument of counsel from counsel, it would be of course, very important that you be concrete. If you simply send a general communication, that probably wouldn't help counsel in framing or focusing any remarks that they might make to the jury and also remember that any such communication should be focused on any factual issues that the jury would like to hear the attorneys make further argument on.

"Other than that, I really have nothing to say. The jury then should of course go back and continue your deliberations as previously. The jury is now free to resume its deliberations."

response at 2:20 P.M., and returned a verdict of guilty approximately one hour later, at 3:30 P.M. on Tuesday, March 23.

*Discussion.* The technique suggested by the judge appears to have been rarely used outside the Commonwealth[6] and is unprecedented here. Although it has been touted as a useful way to maximize the chances of a verdict and avoid mistrials, see Dann, "Learning Lessons" and "Speaking Rights": Creating Educated and Democratic Juries, 68 Ind. L.J. 1229, 1269-1275 (1993), it also has been viewed as an unwarranted invasion into the privacy and confidentiality of jury deliberations. See Munsterman, Hanaford & Whitehead, Jury Trial Innova-

---

[6]There is a reported decision in which this procedure was used and later defended by a trial judge, *Withers* v. *Ringlein*, 745 F. Supp. 1272, 1274 (E.D. Mich. 1990). *Withers* was a civil action brought under 42 U.S.C. § 1983, alleging claims of police brutality against three defendants. The jury returned a partial verdict and informed the judge that they seemed to be at an impasse with respect to the remaining claims. The judge refused to give a so-called *Allen* or "dynamite" charge, see *Allen* v. *United States*, 164 U.S. 492 (1896), and instead, over the plaintiff's objection, asked the jury to communicate subjects for reargument by counsel. After deliberating for about an hour and a half following reargument, the jury returned a verdict adverse to the plaintiff. Plaintiff's motion for a new trial on the ground that the use of this technique was prejudicial was denied by the trial judge. There is no subsequent appellate decision in the case.

The practice has been endorsed in Arizona, following a comprehensive review of Arizona's jury system and jury trial procedures by a committee of that state's Supreme Court. As recommended by the committee, the Arizona rules of civil and criminal procedure were amended in 1995 to include a provision entitled "Assisting Jurors at Impasse," which states: "If the jury advises the court that it has reached an impasse in its deliberations, the court may, in the presence of counsel, inquire of the jurors to determine whether and how court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the judge may direct that further proceedings occur as appropriate." Ariz.R.Civ.P. 39(h). Ariz.R.Crim.P. 22.4. The comments to these amended rules contain suggested language for the judge to use when making the inquiry and steps that may be taken if the jury responds affirmatively, including, but not limited to, directing the attorneys to make additional closing argument. Ariz.R.Civ.P. 39(h), Comment to 1995 Amendment. Ariz.R.Crim.P. 22.4, Comment to 1995 Amendment. The proponents of the rule change viewed this approach as an alternative to using a "dynamite charge," which the Arizona Supreme Court had disapproved as too coercive in a number of cases. See Arizona Supreme Court Committee on More Effective Use of Juries, Jurors: The Power of 12: Report of the Arizona Supreme Court Committee on More Effective Use of Juries (1994).

tions § VI-11 (1997) (listing advantages and disadvantages of the technique).

In the present case, as the jury did not take the trial judge up on his suggestion,[7] we are not faced with deciding whether it would have been reversible error had the jury actually identified disputed factual issues for purposes of reargument.[8] Rather, the question before us is whether the mere making of the suggestion by the trial judge was impermissibly coercive.

The defendant argues that the judge's proposal placed additional, unwarranted pressure upon the jury to reach agreement above and beyond the "sting" already contained in the *Tuey-Rodriquez* charge. See *Commonwealth* v. *Rodriquez*, 364 Mass. at 100. See also *Commonwealth* v. *Sosnowski*, 43 Mass. App. Ct. 367, 374-375 (1997) (judges urged not to stray from the language recommended for use in *Rodriquez*). We acknowledge that where the jury had deliberated for only an hour after hearing the *Tuey-Rodriquez* charge on Monday afternoon and had not reiterated any concerns about impasse, it may have been unnecessary and premature for the judge to say anything more on the subject when court resumed on Tuesday morning. Still, the judge's words were only an invitation. He made it abundantly clear that the proposed procedure was entirely optional, and the jury evidently felt free to reject it and to continue their deliberations. In these circumstances, we see no indication that the jury were coerced into rendering a verdict by the judge's suggestion. See *Commonwealth* v. *Martins*, 38 Mass. App. Ct.

---

[7] We disagree with the defendant's contention that the jury's Tuesday morning note asking what they should do when one or more of their number did not place significant value on police testimony signaled their acceptance of the judge's suggestion. The judge's proposal was that the jury "put in a concrete form as precisely and as concrete[ly] as possible what factual issue or issues they would like the attorneys to address on further final argument." We do not read the jury's Tuesday morning communication as responsive to this invitation; we therefore do not share the defendant's concern that the jury must have expected reargument and become exasperated when it was not forthcoming.

[8] We note, however, that as determined by the Supreme Judicial Court single justice, this controversial experiment was best stopped in its tracks — especially since counsel and the defendant had not agreed to it. Cf. *Commonwealth* v. *Britto*, 433 Mass. 596, 610-614 (2001) (encouraging, although not requiring, advance consultation with the parties when the judge considers allowing jurors to pose questions to witnesses).

636, 640-641 (1995) (where the jury looked tired and drained when the judge first delivered a *Tuey-Rodriquez* charge, reading it again the next morning was not an abuse of discretion; the jury's continued deliberation and asking of a question belied the defendant's claim that the verdict was coerced).

The defendant also claims that it was coercive for the jury's Tuesday morning question to go unanswered for close to three hours. The record reveals, however, that the judge had informed the jury on Monday that he was beginning another trial, that he might not be available to respond to their inquiries immediately and that they should keep working while they waited for him. Since the jury well understood the reason for the delay, we fail to see how they could have felt abandoned and pressured to make a decision.

The defendant's second issue requires no extended discussion. Suffice it to say that there was enough nonhearsay evidence to establish an adequate probability that Daley and the defendant were working together to traffic in cocaine. Thus, there was no error in admitting the out-of-court statement of Daley that he would have to contact his supplier to get the cocaine. See *Commonwealth* v. *Nascimento*, 421 Mass. 677, 680-681 (1996); *Commonwealth* v. *Cruz*, 430 Mass. 838, 844 (2000).

*Judgment affirmed.*

LENK, J. (concurring). Because I agree that the jury reached their verdict without taking up the judge's suggestion, reversal is not required. Had they done so, however, the result might well have been different. I write separately only to underscore how perilous it can be to proceed, particularly in a criminal trial, with such experimental techniques, absent some demonstrated need and over the objection of counsel. The very laudable quest to improve our system of justice by devising and implementing improved jury trial practices is better advanced in certain situations than it is in others. Here, the technique proposed was largely unprecedented, and there was very little information available about it. The technique would impact directly upon the jury's deliberations, a trial function widely

regarded in our system as virtually sacrosanct. Given this, as well as that the jury had received the *Rodriquez* instruction late the preceding day and had not yet begun the new day's deliberations, that both counsel were quite opposed to the suggestion, and that the prosecutor had indicated her intent to seek review forthwith from the single justice housed in the same building, a more prudent course might well have been to await either further indication that the jury was at an impasse or guidance from the single justice before putting the new procedure before the jury.